### HOCK et al. v. TEXAS EMPLOYERS' INS. ASS'N.
### No. 10065.

Court of Civil Appeals of Texas. Galveston.
Feb. 21, 1935.

Rehearing Denied March 7, 1935.

Dick Young, of Houston (Geo. G. Clough, of Houston, of counsel), for appellants.

Ben Connally and Sewell Taylor, Morris & Garwood, all of Houston, for appellee.

PLEASANTS, Chief Justice.

This is a suit by appellants against appellee to recover compensation claimed under the Workmen's Compensation Law of this state (Vernon's Ann. Civ. St. art. 8306 et seq.) at the rate of $19.61 per week for 350 weeks for injuries received by appellant Hock as an employee of the Lone Star Cement Company.

Proper notice of the claim was given, and upon a hearing by the Industrial Accident Board that tribunal, on February 23, 1932, approved the claim for the amount of $17.31 per week for the period beginning July 31, 1931, and extending up to the date of the order of approval by the board, and for an indefinite period thereafter until modified, changed, or terminated by agreement of the parties, or by subsequent award of the board, but in no event to continue longer than 100 weeks. One-third of this award was made by the board to appellant Young as attorney's fees for representing Hock in the prosecution of the claim.

Both parties gave notice of dissatisfaction with the award and of their intention to appeal to the district court.

The petition of plaintiff filed in the district court, in addition to allegations of the facts relied on to show the liability of appellee to Hock for compensation for the injuries received by him, alleges that the plaintiff Hock had contracted with his attorney, Dick Young, who is coplaintiff in the suit, to pay him as attorney's fees one-third of the amount recovered by the suit, which contract was approved by the Industrial Accident Board.

The petition further alleges in the alternative that, if it be found that plaintiff Hock is not entitled to compensation for total and permanent disability for the length of time and at the rate above stated, he be allowed compensation for partial disability at the rate and for the time specified in the Compensation Act.

Appellee answered appellant's petition by a general demurrer and general denial, and by cross-action set up the facts showing it had given the proper notice and perfected its appeal from the award of the Industrial Accident Board, and prayed that the award of the Accident Board be set aside and that appellants take nothing by their suit.

In his original notice and claim for compensation filed with the Accident Board, plaintiff Hock states the injury was caused by "cement dust coming in contact with (his) moist body." The petition in this suit alleges:

"That on and about the said 31st day of July, 1931, the plaintiff L. V. Hock received an injury in the course of his employment by the said Lone Star Cement Company; that his body came in contact with cement with which he was working, and by reason thereof, the skin of his legs and body was eaten and burned by the said cement, which contains lime and other violent minerals and chemicals; that he was required to work in a closed elevator shaft, where particles of cement were in the atmosphere and air, and which with the lime and other corrosive minerals and chemicals contained in said cement, was thereby caused to come in contact with his legs and body, eating and burning the skin of his legs and body, causing the same to become raw and swollen, and eating away the skin on the inside of his legs, and on his body, and causing him such pain in his efforts to work as a laborer, as to preclude him from following his vocation as a laborer, as to obtain and retain employment as such.

"That the skin on the inside of his legs in particular is destroyed by the eating process of the lime, caused by the lime in the cement, and other mineral and chemical matter therein, coming in contact with his legs; that the same is raw and sore and swollen as aforesaid; and that such condition likewise exists on the lower parts of his body; and that injuries are permanent."

The following evidence appears in the statement of facts:

Plaintiff Hock testified: "The injury was caused by perspiration and carrying stuff; the cement caked on my body to such an extent that they had to take cream to get it off, taking the hide off and causing swelling which went all over my body. I was working (that day) in the elevator shaft. It joins the finish mill; it is used for drawing clinkers up and emptying them into the silos where they grind them to make the cement. I was taking out the old shaft and putting in a new one; there were lots of the particles of cement in the air; I was working there that day 12 hours. It settled thick over my body, it cemented over. It caked up on my shoulders; it settled all over my body; it penetrated through my clothing. It settled and caked on my shoulders; it took all the skin

off and caused my arms to swell, and it went from there clear down to the bottom limbs. It settled mostly between my thighs, and caused layers of skin to come off., I didn't work for 6 or 7 days after that; the foreman told me not to work."

. Witness then described treatment given by company physicians; that Dr. Clark of the Houston Clinic, company doctor, treated him 5 months, and didn't cure him. Witness is still suffering. He did not work after this injury; he stayed out on the job 6 or 8 days, but did no work. The only work he did was about 15 days' painting. He has no other employment than that of a laborer. At this time he is broken out between thighs and under arms; worked 5 or 6 days at Galveston since injury and had to lay off on account of condition of his body; could not wear his clothes.

O. W. Cunningham, a witness for plaintiff, testified that he went to work in the cement plant on December 8, 1930, and quit the work in November 1931, that he was a laborer in the iron and structural steel work, and that on July 31, 1931 (the day on which plaintiff Hock quit work on account of his injured condition), they were engaged in tearing down the kiln and putting in a new separator.

Oleson, another witness for plaintiff, testified that he was doing general labor work at the cement plant; that he was helping with the construction work, and worked with plaintiff at the last, "just the last job I worked with him."

Other undisputed evidence shows that Hock worked in the cement plant of his employer for about 5 months prior to his alleged injury; that he was working in and about the premises where cement was being manufactured; that the air was filled with particles of cement; that there was a great deal of dust caused by the manufacture of cement, which settled on his body and penetrated his clothes, and the perspiration from his body caused the cement dust to cake on his shoulders and caused his arms to swell, and irritation about his legs and body generally.

Plaintiff further testified that this condition became so bad that on or about July 31, 1931, he reported the matter to his employer, and was referred to a doctor for treatment; that he was given a prescription of salve for his skin trouble, which prescription he had filled and used frequently.

The employment record of the cement company shows that Hock went to work for the company about April 15, 1931, "was laid off July 31, 1931; on account of illness. Returned to work August 1, 1931, but was laid off August 6, 1931, due to illness." It further appears from this record of employment that he was laid off finally on December 12, 1931, with other employes, whose "services were no longer needed."

All of the medical testimony on the trial, including that of plaintiff's medical witnesses, was that plaintiff was suffering from cement poisoning, a type of a disease known to medical science as dermatitis; that such disease was caused by the continued exposure of plaintiff to the irritating effect of cement dust on his skin and legs.

The testimony of plaintiff Hock and witnesses for him shows that he had been exposed to cement dust during the entire time of his employment. Hock further testified that he ordinarily worked twelve hours a day. The doctors who testified that dermatitis, whether caused by cement poisoning or by poisoning from exposure to radium, arsenic, lead, or other similar minerals or substances, was classified by eminent medical authorities as an occupational disease.

From the testimony as a whole, it seems clear to us that plaintiff's disease which causes his suffering and disability was contracted in his occupation as a cement worker.

■ It is, we think, well settled by the decisions of our courts that our workmen's compensation statute does not give compensation for disability caused by an occupational disease, but only for disability caused by accidental injuries to the body and such diseases and infections as naturally result therefrom. Gordon v. Travelers' Ins. Co. (Tex. Civ. App.) 287 S. W. 911; Texas Employers' Ins. Ass'n v. Jackson (Tex. Com. App.) 265 S. W. 1027; Ætna Life Ins. Co. v. Graham (Tex. Com. App.) 284 S. W. 931; Middleton v. Texas Power & Light Co., 108 Tex. 96, 185 S. W. 556.

The case of Houston Packing Company v. Mason (Tex. Civ. App.) 286 S. W. 862, is not in conflict with the cases above cited. In the Mason Case the plaintiff was employed by the packing company as a butcher, and in pursuing the work of his employment he contracted anthrax by coming in contact with anthrax germs in the body of an animal which he skinned. The fact that anthrax germs were found in the body of the animal which the plaintiff was skinning was a fortuitous circumstance, and was purely accidental so far as Mason or his employer was concerned, so was the fact that there must have been some cut or abrasion on Mason's hands

through which the germs got into his blood. In these circumstances, the disease caused by the anthrax germs could not be classified as an occupational disease. The infection would not have occurred had no infected animal been sent to the slaughter house or if there had no't been some abrasion of Mason's skin through which the germ could enter into his blood circulation. In addition to this, the same accidental infection might have occurred in any person who handled the diseased animal as Mason did. In this case Hock and his employer knew of the pervading presence of the cement dust, which was unavoidable in a cement manufacturing plant, and which only causes the skin disease from which Hock is suffering to some of those who work in such plants. This distinction between the cases seems clear to us.

In view of these conclusions upon the primary question of appellee's liability under the undisputed facts for any compensation to appellants, the remaining propositions presented by appellants, which only relate to questions concerning the extent of liability, need not be considered.

For the reasons before indicated, the judgment has been affirmed.

Affirmed.