## TEXAS EMPLOYERS' INS. ASS'N

v.

## ETHEREDGE.

### No. 14752.

Court of Civil Appeals of Texas.

Dallas.

Dec. 18, 1953.

Rehearing Denied Jan. 15, 1954.

Burford, Ryburn, Hincks & Ford, Howard Jensen and Roy L. Cole, Dallas, for appellant.

Caldwell, Baker & Jordan and Claude Williams, Dallas, for appellee.

DIXON, Chief Justice.

This is a workmen's compensation case. Upon the answers of a jury to special issues

judgment was rendered for E. A. Etheredge, appellee, for $1,718.70, and for weekly compensation at the rate of $25 per week for 218 weeks. The insurance carrier has appealed.

Appellee has filed a motion to dismiss the appeal on the ground that a properly authenticated statement of facts was not filed in this Court within the time required by law.

Hon. William M. Taylor, Jr., after sitting for the trial of this case, resigned as judge of the 134th District Court effective April 1, 1953. On the said date Hon. Chas. E. Long, having been duly appointed by our Governor as Judge Taylor's successor, qualified and assumed the office of judge of the court. On April 20, 1953 Judge Long overruled appellant's amended motion for new trial. The statement of facts, approved by Judge Long, was filed in this Court on June 12, 1953, well within the sixty-day period prescribed by Rule 386, Vernon's Texas Rules of Civil Procedure. All these proceedings took place within the session of court duly convened for the term of Court beginning January 1953. The 134th District Court annually holds only two terms of court, each term of six months duration, one term beginning in January, and the other in July of each year.

Former Judge Taylor, with permission of this Court, also signed the statement of facts, but he did not do so until August 7, 1953, which was after the sixty-day period allowed by the Rule.

We overrule appellee's motion to dismiss the appeal. We think that Rule 18, V.R. C.P. is applicable here. We quote from Rule 18: "If the judge * * * resigns * * * during the session of court duly convened for the term * * * such * * * resignation * * * shall not operate to adjourn said court for the term * * *. If a successor to such judge shall qualify and assume office during the term * * * all motions undisposed of shall be heard and determined by him, *and statements of facts and bills of exception shall be approved by him.*" (Emphasis supplied.)

Appellee relies on Art. 2248, V.R. C.S. in support of his motion. We think that any inconsistency, if any there be, between Rule 18 and Art. 2248 must be resolved in favor of the Rule. We quote from Rule 819, V.R.C.P.: "* * * In case of inconsistency between the provisions of these rules and any statutory procedure not specifically listed as repealed, these rules shall apply."

The judgment was based among others on these jury findings: (1) Appellee is suffering from silicosis; (2) he was injuriously exposed to silica dust while employed at Trojan Foundries, Inc.; (3) as a result of silicosis he suffered partial permanent disability of 50% beginning November 13, 1951; (4) he had tuberculosis but tuberculosis is not the sole cause of his incapacity; his tuberculosis was aggravated by silicosis to the extent of 5%; his silicosis was not solely caused by prior exposures.

Appellant has presented nine points on appeal. Boiled down, they are: (1) There was no evidence to support the judgment; (2) there was insufficient evidence to support the judgment; and (3) the court should have submitted issues inquiring whether appellee's silicosis was aggravated by tuberculosis, and, if so, as to what percentage.

Art. 8306, sec. 24, V.R.C.S., as amended in 1947, provides that where compensation is payable for an occupational disease, the employer in whose employ the employee was last injuriously exposed shall be deemed the employer within the meaning of the Act. It is undisputed that appellee has not been injuriously exposed since leaving the employ of Trojan Foundries. If he was injuriously exposed during such employment it was undoubtedly his *last* injurious exposure. The present inquiry therefore narrows itself to this question: Is there sufficient evidence that appellee was injuriously exposed to the hazards of silicosis while working as an employee of Trojan Foundries between January 10, 1951 and November 12, 1951?

Art. 8306, as amended in 1947, does not define the term "injuriously exposed."

However the trial court in this case in his charge defined the term as follows: " * * an exposure or contact with the dangers of silicosis which causes silicosis or excites, accelerates, or aggravates a pre-existing condition of silicosis." No objection was offered to this definition, so it is to be accepted as correct at least so far as the facts of this case are concerned.

In testing the sufficiency of the evidence we are required to consider the evidence and the inferences properly to be drawn therefrom in the light most favorable to the party who obtained the verdict. Mitchell v. Davis, Tex.Civ.App., 205 S.W.2d 812 (writ ref.); 3–B Tex.Jur. 372. Moreover, the testimony of experts, though persuasive, is not conclusive. Coxson v. Atlanta Life Ins. Co., 142 Tex. 544, 179 S.W. 2d 943; 32 C.J.S., Evidence, § 569–k, p. 410. Applying these principles we have concluded that there is sufficient evidence shown by the record to support the jury's answer to Special Issue No. 12 to the effect that appellee was injuriously exposed to silica dust while in the employ of Trojan Foundries, Inc.

Some of the material facts are undisputed. Appellee is 51 years old and has worked in foundries for about 40 years, most of the time as a molder and core maker. "Molding" means the making of molds out of sand containing moisture; "core making" means the making of the inside form of the mold. On some occasions he has worked at furnace tending, melting and other jobs in foundries. Appellee's last employment as a foundry worker was from about January 10, 1951 to November 12, 1951, at Trojan Foundries, Inc.

Silica is the most common substance in the earth's surface. It is almost universally present to a fair degree. The human body has the ability to safely and harmlessly dispose of the amount of silica which is inhaled under normal conditions. However the disease known as silicosis may develop if a person inhales silica in large quantities over a sufficient length of time. Ordinarily it requires from five to fifteen years exposure for development of silicosis. But it may develop in less than two years if a person is subjected to an exposure to concentrated quantities of silica.

Foundry work is recognized as one of the occupations in which silicosis is a hazard. This is because workers in foundries must deal with substances which have a high silica content, such as sand, fire clay, fire brick, furnace residue, and certain metals; and because foundry operations often cause various kinds of silica-laden dust to be present in varying quantities.

Appellee himself testified that in the Trojan Foundries the sand used was placed in piles; that it was carried in conveyors which caused dust to be spilled into the faces of workers. Good white core sand is about 99% silica. Appellee was also required to chip fire brick which exposed him to quantities of dust. He did about 90% of the fire brick grinding with emery wheels, a process which raised such a cloud of dust that appellee sometimes could not see the wheel he was using. The door was off the hinges in the furnace room, which caused a draft that dried out the sand three or four times as fast as it would have otherwise, and picked up the dry sand and carried it from one end of the shop to the other. At times a person could not see from one wall to another, a distance of thirty-five feet. A sand cutting machine was utilized which threw sand all over the shop. Appellee had never been exposed to so much dust at any other foundry as he was in Trojan Foundries. He had to sweep the dust out of the bottom of the furnace. He had to stick his head down in the furnace to get a little of the sand out at a time and put it in a wheelbarrow. The residue from cleaning the sand was practically all silica dust. In August 1951 appellee noticed that he was coughing, was short of breath, and tired easily—symptoms of silicosis.

Appellee's wife and son testified that in August 1951 appellee developed a cough and showed signs of shortness of breath, and tired easily. He no longer engaged in some of the physical activities in which he had formerly engaged. While employed at Trojan Foundries he worked long hours,

sometimes as long as 12, or 15, or even 18 hours per day.

Dr. Elliott Mendenhall, a lung specialist, testified that appellee had silicosis and that he also had a minimal case of tuberculosis when the doctor first examined him in November 1951. A minimal case of tuberculosis means that the disease is present in the least amount—the smallest stage. Bed rest and hospitalization were prescribed. Appellee spent seven weeks in Woodlawn Sanitarium. He then returned to his home where he spent another period of time resting in bed. The doctor had discharged appellee so far as his tuberculosis was concerned. It was an arrested case. When the doctor told appellee he could return to full-time light work December 1, 1952, he recommended that he not return to foundry work or any work where he would be exposed to silica dust. The doctor gave it as his opinion that silicosis is incurable.

Dr. S. A. Kahn, a specialist in internal medicine and diagnosis, saw appellee and diagnosed his ailments as silicosis and tuberculosis. He testified that in his opinion appellee had been injuriously exposed to silica dust.

Appellant brought out through the testimony of a consulting sanitary engineer and several doctors that silicosis will develop in a human being only when small microscopic particles of silica are inhaled. Particles larger in size than ten microns are harmless because they are caught by hairs and mucous membrane in the nose and throat, so do not reach the lungs. Also the small particles must be present in quantities in excess of five million or more particles of free silica per cubic foot in order to be harmful. This testimony was not contradicted. Tests were made by the engineer on November 10, 1952 and November 19, 1952; all of his tests showed that silica dust was present at Trojan Foundries in less than harmful quantities. He did not know what the dust concentration was at the Trojan Foundries from January 6, 1951 to November 12, 1951, but testified that so long as conditions remained the same in the foundry, the dust count would remain the same.

As to whether conditions were the same at the time of the tests as they were at the time of appellee's employment, there is some conflict in the evidence. The testimony of L. C. Carter, an employee of the foundry, tends to show that the general conditions were the same; the testimony of appellee tends to show the contrary. However we do not find anything in the record to show that the tests were made under the conditions as testified to by appellee when he was using the emery wheel, or had his head inside a furnace cleaning out the silica dust, or when the conveyor threw dust in the faces of the workers.

In our opinion the evidence disclosed by the record was sufficient to support the jury verdict and the trial court's judgment based on the jury verdict. Appellant's Points Nos. one, two and three are overruled.

■ Appellant's Points Nos. four to nine inclusive deal with the court's failure to submit requested issues. The court submitted issues to the jury inquiring whether appellee's silicosis aggravated his tuberculosis. Appellant contends that the court also should have submitted requested issues under Art. 8306, sec. 22, V.R.C.S., inquiring whether appellee's tuberculosis aggravated his silicosis and if so, to what extent.

We overrule appellant's contention. Appellant and appellee disagree as to the meaning of Art. 8306, sec. 22, V.R.C.S. Whatever may be the meaning of the statute, it was not proper to submit the requested issues unless there was evidence to support their submission. Appellant has not pointed out to us and we have not found in the record any such evidence. Appellant's Points Nos. four to nine inclusive are overruled.

The judgment of the trial court is affirmed.