# DECEMBER, 1954

TEXAS EMPLOYERS' INSURANCE ASSOCIATION V.
E. A. ETHEREDGE

No. A-4523. Decided November 10, 1954
Rehearing overruled December 15,1954.
(272 S.W. 2d Series 869)

*Burford, Ryburn, Hincks & Ford* and *Howard Jensen,* all of Dallas, for petitioner.

The Court of Civil Appeals erred in holding that respondent met the burden of showing that he was injuriously exposed to silicosis while in the employ of Trojan Foundries; and that the trial court committed no error in refusing to submit petitioner's requested issue as to whether plaintiff's tuberculosis aggravated, prolonged, accelerated or in anywise contributed to respondent's disability naturally resulting from silicosis. Coxson v. Atlanta Life Ins. Co. 142 Texas 544, 179 S.W. 2d 943; Jones v. Traders & Gen. Ins. Co., 140 Texas 599, 169 S.W. 2d 160.

*Caldwell, Baker & Jordan, Williams & Akin and Claude Williams,* all of Dallas, for respondent.

In response cited Travelers Ins. Co. v. McKain, 186 Fed. 2d 273; Leonard v. Fisher Body Co., (Mo.) 137 S.W. 2d 604; Harbison-Walker Refractories v. Harmon, 114 Ind. App. 144, 51 N.E. 2d 398.

JUSTICE GARWOOD delivered the opinion of the Court.

In this final stage of a workmen's compensation case, without much benefit of precedent, we have first to decide whether there is evidence to support the judgment awarded the claimant, Etheredge, by both courts below on account of the occupational disease of silicosis against the petitioner compensation insurance carrier for respondent's last employer, Trojan Foundries, under Sec. 24 of Art. 8306, Vernon's Texas Civ. Stats. Ann. Subject to this question, there is the further one of error in the trial court's refusal of petitioner's requested issues as to aggravation of respondent's silicosis by tuberculosis (Sec. 22 of the same article).

The mentioned sections and others not clearly irrelevant are for convenience set out at length in the footnote.[1] For the opinion of the Court of Civil Appeals, see 263 S.W. 2d 815.

---

1.—"Sec. 21. If the employee, at the time of his employment, wilfully and falsely represents in writing that he has not previously been afflicted with the occupational disease which is the cause of incapacity or death, no compensation shall be payable.

"Sec. 22. Where an occupational disease is aggravated by any other noncompensable disease or infirmity, or where incapacity or death from any other

Respondent's employment with Trojan Foundries, which was terminated by his disability around November, 1951, began about eleven months previously, but included only seven or eight months of work with sand molds and cores for metal castings, an avocation of which silicosis is "characteristic" (Sec. 25 supra) and which he has pursued for many different employers almost continuously throughout a working life of nearly forty years.

He pleaded primarily, and supported with evidence, a claim of industrial accident consisting of a fall in early September 1951, at the Trojan plant, which allegedly caused, or activated a dormant condition of, disabling *tuberculosis* (not an occupational disease). The jury, however, found that the accident, though occurring, did not produce disability, and this phase of the case is ended.

On the alternative claim of occupational silicosis the jury found permanent partial disability to exist therefrom, and also made the necessary findings to satisfy the requirements of Sec. 25, supra, and also those of Sec. 26(b) to the effect that respondent "during the ten (10) years immediately preceding the date of incapacity the employee has been exposed to the inhalation of silica dust * * over a period of not less than five (5) years * * *." These findings are not now questioned or questionable. What is questioned, and vigorously, is the finding made pursuant to Sec. 24, supra, that respondent, in his final and relatively brief employment with Trojan, was (to quote from Special Issue No. 12) "injuriously exposed to silica dust." In this behalf, there being no statutory explanation of the rele-

---

non-compensable cause, is aggravated, prolonged, accelerated or in anywise contributed to by an occupational disease, the number of weeks of compensation payable by the Association shall be reduced and limited to such proportion only of the total number of weeks of compensation that would be payable if the occupational disease were the sole cause of the incapacity or death, as such occupational disease, as a causative factor, bears to all the causes of such incapacity or death, such reduction in compensation to be effected by reducing the number of weekly payments of compensation for which the Association is liable.

"Sec. 23. The provisions of this Act do not apply to cases of incapacity or death resulting from a disease in which the last injurious exposure to the hazards of such disease occurred before the date on which this Act takes effect.

"Sec. 24. Where compensation is payable for an occupational disease, the employer in whose employ the employee was last injuriously exposed to the hazards of such disease shall be deemed the employer within the meaning of the Act.

"Sec. 25. The Association shall not be liable for any compensation for an occupational disease unless such disease shall be due to the nature of an employment in which the hazards of such disease actually exist, and are characteristic thereof and peculiar to the trade, occupation, process or employment, and is actually incurred in such employment, and unless incapacity or death results

vant language of Sec. 24 to the effect that "* * * the employer in whose employ the employee was last *injuriously exposed to the hazards of such disease* shall be deemed the employer * * *," the trial court, without objection from either party, instructed the jury that "injuriously exposed" meant "an exposure or contact with the dangers of silicosis which causes silicosis, or excites, accelerates or aggravates a pre-existing condition of silicosis."

It was also found that the respondent's *tuberculosis,* of which medical evidence of both parties showed him to suffer at least a moderate case, and to which the petitioner's evidence attributed whatever disability the respondent might have, "* * was aggravated * * or * * contributed to *by silicosis*"; and that "the percentage * * that such silicosis aggravated * * or * * contributed to such *tuberculosis*" was "5%". These findings were treated by the trial court as requiring a deduction, under Sec. 22, supra, of five per cent of the award otherwise corresponding to the disability found to exist, and that ruling is not questioned by the respondent, although in the same connection the petitioner raises the secondary question first above mentioned and hereinafter treated.

■ Before discussing the merits, it should no doubt be observed that the respondent's contest of our jurisdiction to review the case is plainly without merit. Of the several subdivisions of Art. 1728, Vernon's Texas Civ. Stats. Ann., invoked by the petitioner, No. 6 is clearly applicable, and the corresponding "statement of jurisdiction," which the respondent criticizes for not specifying the alleged error of law committed below, is in the exact wording suggested by Rule 469, Texas R. Civ.

---

within three (3) years in the case of silicosis or asbestosis, or one (1) year in case of any other occupational disease, after the last injurious exposure to such disease in such employment; or, in case of death, unless death follows continuous incapacity from such disease commencing within the period above limited, for which compensation has been paid or awarded or timely claim made as provided in this Act, and occurs within three hundred sixty (360) weeks after such last exposure.

"Sec. 26. (a) Wherever used in this section 'silicosis' shall mean the characteristic fibrotic condition of the lungs caused by inhalation of silica dust. 'Asbestosis' shall mean the characteristic fibrotic condition of the lungs caused by the inhalation of asbestos dust.

"(b) In the absence of conclusive evidence in favor of the claimant, disability or death from silicosis or asbestosis shall be presumed not to be due to the nature of any employment within the provision of this section, unless during the ten (10) years immediately preceding the date of incapacity the employee has been exposed to the inhalation of silica dust or asbestos dust over a period of not less than five (5) years, two (2) years of which shall have been in this state, under a contract of employment existing in this state; provided, however, that if the employee shall have been employed by the same employer during the whole of such five (5) years period, his right to compensation against the association shall

Proc. The rule thus dispenses with including points of error in the jurisdictional statement—evidently because its further provisions require the points to be listed in a later portion of the petition.

True, petitioner's Point 1 (to the effect that the respondent-plaintiff has not "met the burden of showing that he was IN-JURIOUSLY exposed to silicosis while in the employ of" the insured employer) does not over-exactly state the law question of "no evidence," of which we have jurisdiction, as distinguished from the fact question of "against the overwhelming weight and preponderance of the evidence" (often referred to as "insufficiency of the evidence") which is final in the Court of Civil Appeals. But we have ample discretion and no difficulty to determine from the rest of the petition, including the prayer for rendition of final judgment against the respondent, that the law question is presented. The latter was obviously the subject of the ruling of the Court of Civil Appeals which is complained of, since that court expressly applied the rule of looking only at the evidence favorable to the verdict. This rule, while applicable to the law question, is definitely not applicable to the fact question, which requires the Court of Civil Apeals to consider and weigh all of the evidence—although in a scale quite different from that applicable to the jury. See In Re King's Estate, 150 Texas 662, 244 S.W. 2d 660; 30 Texas L. Rev. 803.

■ Passing now to the merits, Sec. 26, supra, defines silicosis as "the characteristic fibrotic condition of the lungs caused by the inhalation of silica dust." Actually it is less a disease than

---

not be affected by the fact that he has been employed during any part of said period outside this state; provided further, that the employee has not been working outside of the state for more than one (1) year prior to the commencement of incapacity.

"(c) In the event of incapacity or death from silicosis or asbestosis, compensation shall be payable to employees or their beneficiaries as follows: If incapacity occurs, or, in the case of no claim for prior incapacity, if death occurs in the first twelve (12) months period after this section becomes effective, the total compensation or death benefits payable shall be twenty per cent of the number of weeks of compensation otherwise payable for such incapacity or death. If incapacity occurs, or, in the case of no claim for prior incapacity, if death occurs during the next twelve (12) months period, the total compensation or death benefits payable shall be forty per cent of the number of weeks of compensation otherwise payable for such incapacity or death. Thereafter, the total number of weeks of compensation payable for incapacity or death shall increase at the rate of twenty per cent for each succeeding twelve (12 months period; the aggregate number of weeks of compensation payable in each case to be limited according to the foregoing formula for the year in which incapacity occurs, or, in case of no claim for prior incapacity, in which death occurs. Such progressive increase in the limitation of the total number of weeks

a progressive abnormality or injury due to the gradual accumulation in the lungs of tiny particles of silica dioxide ("free silica") so small as to be invisible to the naked eye and to defeat nature's protective devices of hair filters and moisture in the respiratory organs and so numerous as eventually to exceed nature's power to absorb or tolerate them. They, and the irritation they engender, cause nature to build up corresponding pulmonary areas of hard tissue and to this extent incurably to alter and impair the normal structure and function of the lungs.

Silicosis differs from tuberculosis in that the latter involves the operation of a germ as distinguished from a mechanical and perhaps chemical irritation, but both involve something in the nature of permanent scars on the lungs, fatigue, shortness of breath and cough, and tuberculosis is far more prevalent among silicotics than among people generally. Respondent's medical evidence in the main described his condition as a combination of both illnesses, the tuberculosis being of quite recent origin and moderate degree, while as stated, the evidence of petitioner attributed the entire disability to tuberculosis.

The character of silicosis as an accumulation, and a mechanical and chemical diffusion, of foreign matter, and the consequently slow process whereby it develops, ordinarily render somewhat speculative the determination of (a) the time of its occurrence as a status properly to be diagnosed as silicosis and (b) the period of employment to which it is properly chargeable. Indeed its actual diagnosis ordinarly must be based in good part upon a history of exposure to silica dust in addi-

---

of compensation in any event payable for incapacity or death due to silicosis or asbestosis shall continue only until such total number of weeks equals but does not exceed the number which would be payable to the particular employee or his beneficiaries had such incapacity or death been due to an injury other than an occupational disease.

"  *   *   *   *   *   *   *.

"(e) Where an employee, though not actually incapacitated, is found to be affected by silicosis or asbestosis, he may, subject to the approval of the Board, be permitted to waive in writing full compensation for any aggravation of his condition that may result from his continuing in the hazardous occupation. In the event of total incapacity or death as a result of the disease with which the employee was so affecter, after such a waiver, compensation shall nevertheless be payable as herein elsewhere provided; but in no case, whether for incapacity or death or both, for longer than one hundred (100) weeks. A waiver so permitted shall remain effective, for the trade, occupation, process, or employment for which executed, notwithstanding a change or changes of employer. The Board shall make reasonable rules and regulations relative to the form, execution, filing or registration and public inspection of waivers or records thereof.

"*   *   *   *   *   *   *."

tion to symptoms afforded by X-ray examination and otherwise. The presence in the lungs of some free silica does not necessarily constitute silicosis or render its occurrence inevitable, because nature can absorb or "tolerate" a certain amount. And, depending upon how much exposure had theretofore occurred, a person with some accumulation of free silica might then and there withdraw from further exposure and either develop silicosis within the ensuing few years or not ever develop it. Evidently even where silicotic scars or areas have developed, the affected party is not necessarily disabled. For various purposes the time element is obviously important. A period of several years freedom from silicosas ensuing upon exposure but without further exposure strongly indicates that the "disease" will not occur in the absence of additional exposure. A long exposure (5 to 20 years) is far more likely to produce it, or aggravate it if already in existence, than a short one and is generally conceded to be essential to contracting it, although by respondent's expert testimony it *could* be contracted in "less than 2 years" in exceptional cases. The time element qualifies, and is itself heavily qualified by, the density of concentration of free silica constituting the exposure. However, according to what may be described as prevailing scientific opinion—whether agreed to by *all* experts in the field or fixed beyond possibility of change, we know not—the concentration of the microscopic particles must be at least as great as 5 million to the cubic foot of air in order that exposure thereto may be harmful.

All of the foregoing seems rather clear from the expert testimony produced by each party to the suit and much of it is reflected in the statute itself. Sec. 25, supra, denies compensation where the incapacity first arises three years or more after the "last injurious exposure in such employment." Sec. 26(b) practically amounts to such a denial, unless there has been an exposure "to the inhalation of silica dust" for the 5-out-of-10-year period just preceding disability. Sec. 26(c) permits full compensation only after 5 years from the effective date of the occupational disease portion of the statute (1947) and reduces the compensation for earlier disability by 20 per cent for each year by which the period falls short of 5. Sec. 26(e) provides for special employment contracts by, and correspondingly reduced compensation risk to, an employer in hiring persons "not actually incapacitated" by, but already "affected by," silicosis.

The critical Sec. 24, supra, placing the burden of compensation *payment* according to the last injurious exposure, comes

into operation, of course, only where disability from the occupational illness in question has been shown (with corresponding proof that the disability occurred (a) within 3 years after the last injurious exposure and (b) at the end of the 10-year period during 5 years of which "the employee has been exposed to the inhalation of silica dust"). Section 24 obviously does not speak in terms of original or even added *disability* as related to the work with the employer in question, nor specify any partciular degree or amount of the injury that must be shown to arise from exposure with that employer. To this extent at least, the trial court's definition of "injuriously exposed" would have been sustained, had it been attacked. No doubt the mere coincidence of disability with a particular employment period of less than 5 years, in which some exposure exists, is not evidence of injurious exposure. But this is not the same as requiring of the claimant a mathematical or similar "exact" scientific demonstration that conditions appropriate for injury existed. The inference, if any, from 26(b), that an exposure of as much as 5 years with a particular employer, plus symptomatic proof of silicosis, may be evidence that the exposure was injurious, does not throw much light upon the matter of proof required where the exposure period is much shorter. Nor does the statute elsewhere suggest any specific method or requirement of such proof.

The petitioner's argument seems to be that the evidence shows beyond doubt that concentration of more than 5 million dangerous particles per cubic foot of air is a prerequisite to any injury to any person from silica dust, and that, there being no proof in terms of the number of particles per cubic foot at Trojan Foundries, except the evidence for the petitioner indicating the concentration to be far less than that mentioned, there is no evidence of injurious exposure to the respondent at Trojan Foundries. Such proof obviously entails rather elaborate tests conducted by a person of special skill with the use of considerable scientific equipment. (In the instant case the tests were made about a year after occurrence of the respondent's disability.) The petitioner's point is, not that its proof of the tests conclusively established the 1951 concentration as being less than 5 million per cubic foot, but that the respondent's failure to prove a concentration in excess of that density was fatal. Implicit in this contention is the further one that such purported proof as respondent did produce of an injurious exposure was without substance.

In brief, the respondent's critical proof consisted of his

own testimony and that of his medical expert, Dr. Kahn. Respondent testified as a layman but one who evidently occupied a definitely higher place in the plant than the ordinary workman and had a whole life of foundry experience behind him. He told in considerable detail of the large amount of silica type sand and other materials such as fire brick and fire clay used in the plant, the various operations, such as grinding and chipping fire brick, sand blasting, shovelling and conveying sand, cleaning the furnaces, and the great amount of dust produced therefrom, the absence of ventilation devices which are used in certain other foundries, and so on. He testified that he "had never been exposed to so much dust at any other foundry" in the long list of those in which he had worked. It is probably fair to say that he made out as good a case of conditions calculated to cause or abet silicosis as one could do in a brief exposure situation without the use of the abovementioned scientific tests or circumstantial proof such as injury to other Trojan employees.

The testimony of Dr. Kahn seems, indeed, to a layman somewhat vague and inconsistent, although the subject hardly lends itself to exactitude. At some points he appears to admit that the allocation of injury to a particular period of exposed employment could not be made without knowledge of the degree of concentration as exceding 5 million particles per square foot, and obviously he had no knowledge of the actual concentration at Trojan Foundries. At other points he testifies that taking the respondent's testimony as true, he thought the exposure at Trojan simply "could" have injured him. But he does say clearly at still other points that it was not at all "advisable for a man who has developed silicosis to return to any type of employment where he is exposed to silica dust" because "It just keeps on adding damage to an already damaged important organ," and that he "Would regard work around any foundry as being harmful to a person who had a silicosis that had been developing over the years." (Even respondent's witness, Dr. Mendenhall, who was rather absolute in his view that a concentration of less than 5 million particles is quite harmless, advised respondent against returning to foundry work.)

There was ample evidence from both Dr. Kahn and Dr. Mendenhall, that respondent's silicosis "had been developing over the years," and had reached something at least not far from its present status by the beginning date of his employment with Trojan. We think Dr. Kahn's testimony can reasonably be interpreted as including an opinion that respondent's

exposure to silica dust at Trojan, even if the concentration of dangeorus dust were considerably less than the "accepted" density, actually did him some harm. With the legitimate reservation that our decision may well not entail a like result in later cases with different evidence and that our conclusion about the finality of particular scientific "facts" (so often mere contemporary majority opinion!) will necessarily vary with scientific progress, we conclude that the opinion of Dr. Kahn was, with the other proof, some evidence to sustain the questioned finding of injurious exposure at Trojan Foundries.

As indicated, no provision in the statute itself regarding proof makes the abovementioned testimony inadequate, nor does any decision to which we are cited purport to require proof by laboratory-type tests of the number of silica particles. Rather the suggestion in most of the cases is to the contrary, although the citations of both parties are less than persuasive, due to differences in the factual background or other considerations. Other than tests, there is scarcely any way in which the necessary proof might be made except that here followed by respondent. We do not greatly "liberalize" the law, when we hold, in effect, that the inability of an employee to maintain by tests current and detailed scientific knowledge of dust conditions in the plant or plants in which he works so as to reproduce this knowledge later on in support of some possible future claim, ought not for all practical purposes to negative his rights under Sec. 24. True, as before suggested, this impossible situation might not prevail, where the length of the exposure were such as, with the clinical evidence, to create an inference of injury during the period in question. Yet the absence of any minimum period in Sec. 24 certainly suggests intended liability regardless of mere length of exposure and this liability would rarely exist in fact, if the particle-count type of proof should be required. The result is that injurious exposure under Sec. 24 may be established by evidence of the kind produced here, that is, lay evidence of substantial amount of silica dust plus medical opinion connecting it with actual injury. If this be a hardship on insurers such as the petitioner, what of the converse hardship on the claimant in a case wherein disability should develop just under 3 years after a last foundry employment of, say 4 years as the law contemplates might happen? How would a workman be able to procure *ex post facto* a particle-count for even a little part of the exposure period?

Our holding is, in brief, that the respondent has made out

a case, even conceding the evidence to establish conclusively that the 5 million particle theory is the controlling scientific view. We proceed to hold further that the evidence does not in fact so establish. Dr. Kahn's evident conclusion that the exposure to silica dust at Trojan did some harm may be taken as meaning that, however generally accepted the theory in question might be, he did not regard it as applicable to every case, including this one. And while, indeed, his testimony does appear at times to contradict itself, the conflict presents rather a question for the jury (or for the Court of Civil Appeals under a proper assignment of "against the great weight of the evidence") than for us. Pacific Fire Insurance Co. v. Donald, 148 Texas 277, 224 S.W. 2d 204. In Re King's Estate, supra. By the same token, the conclusions of respondent's witness Dr. Mendenhall do not as a matter of law destroy the contrary conclusion of his witness Dr. Kahn.

■ There remains the point of whether the trial court rightly refused (as the Court of Civil Appeals held that it did) the petitioner's requested special issues Nos. 1 and 2, under Sec. 22, supra, the former reading:

"REQUESTED SPECIAL ISSUE NO. 1:

"If you have answered Special Issue No. 24 'he did have such tuberculosis,' then you will answer the following special issues; otherwise, you need not answer same.

"Do you find from a preponderance of the evidence that plaintiff's tuberculosis, if any, has aggravated, prolonged, accelerated, or in anywise contributed to the disability, if any, of plaintiff naturally resulting from his silicosis, if any.

"Answer YES or NO."

No. 2 was conditioned on a "Yes" answer to No. 1 and enquired as to the "percentage" of the mentioned contribution of tuberculosis to *disability from silicosis*.

Respondent's pleading as to occupational disease made no mention of tuberculosis, petitioner, on the other hand, having pleaded "pre-existing tubercular disease" as the sole cause, or alternatively, "a contributing cause of his present disability, if any he has."

As before indicated, respondent undoubtedly had tuberculosis, the petitioner's medical witness testifying that he had it and nothing else, while respondent's proof pointed to a moderate

case, probably attributable to a rather long standing condition of silicosis, and arrested in its progress at the time of trial. With the possible exception of this latter testimony, there was none purporting to allocate percentage-wise, as between the two illnesses, responsibility for respondent's disability or to specify the amount of influence, if any, either illness had on the other.

The jury submission (on the occupational disease claim) consisted of Special Issues Nos. 11 through 28. Nos. 11 through 21 dealt with whether respondent had silicosis, whether disability resulted therefrom and, if so, whether the latter was permanent or temporary and total or partial. Nos. 22 and 23 dealt with the conditions provided in Sec. 26(b), supra. Nos. 24 through 27 enquired as to whether respondent had *tuberculosis,* as to its relationship with his silicosis, if any, and whether tuberculosis was not the sole cause of disability. No. 28 enquired as to exposure prior to his employment with Trojan as the sole cause of his silicosis. Nos. 25 and 26 presented the questions answered by the heretofore quoted finding that respondent's *silicosis* contributed to his *tuberculosis* by 5 percent, although, as indicated, there was no pleading of any such fact by either party.

The core of Sec. 22, supra, is its final provision that:

"* * the number of weeks of compensation payable * * * shall be reduced and limited to such proportion only of the total number of weeks * * * that would be payable if the occupational disease were the sole cause of the incapacity or death, as such occupational disease, as a causative factor, bears to all the causes of such incapacity or death * * *."

This reduction of compensation is said to follow:

"Where an *occupational disease* (e.g. silicosis) is aggravated by any other (sic) noncompensable disease (e.g. tuberculosis) *or* where *incapacity—from any* other noncompensable cause, (e.g. tuberculosis) is aggravated, * * * or in anywise contributed to by an occupational disease" (e.g. silicosis; emphasis and parentheses supplied.).

This section appears to make a deliberate and radical difference between the law applicable to occupational disease and that concerning industrial accident, where the erstwhile compensable event or disability may be affected by a noncompensable factor. There is no comparable provision in the law concerning industrial accident. For example, when the claimant

suffers an injurious fall while at work he is compensated without regard to the fact that the fall would not have occurred but for an attack of epilepsy. Garcia v. Texas Indemnity Ins. Co., 146 Texas 413, 209 S.W. 2d 333. For another example, where an industrial accident and heart disease together cause the employee's death, compensation is paid just as if the heart disease had no connection with the matter. Texas Employers Ins. Ass'n v. Smith, 235 S.W. 2d 234, Texas Civ. App., writ of er. refused.

The section is somewhat confusing, due to its apparently alternative provision (in the last quotation above) for (a) aggravation of occupational (compensable) *disease* by noncompensable disease, and for (b) aggravation of *disability* from noncompensable disease or other source by occupational disease. These seemingly alternative situations are both given the one consequence of calculating compensation on the basis of the relative causal contribution to *disability* of the two respective types of illness. Evidently the intent is that where both types contribute to whatever disability the claimant suffers, compensation shall be allowed in the degree, but only that degree, in which the occupational disease *contributes to the incapacity*.

Submitted issues 25 and 26 were in terms of alternative (a) in that they inquired only as to aggravation of a *disease* as distinguished from *incapacity;* and yet the "aggravated" disease inquired about was not the occupational one, but the tuberculosis. These issues were not proper respondent's issues under the pleadings, since respondent's pleadings were based on silicosis as the sole producing cause of disability, while those of petitioner naturally did not claim an aggravation of tuberculosis by silicosis, but rather the aggravation of disability or of silicosis by tuberculosis.

As to petitioner's refused issues, the subject matter in general was appropriate to its theory of the case, being defensive to a claim of disability from occupational disease and designed to defeat or reduce that claim by attributing at least part of respondent's disability to a noncompensable disease. The real contribution of each illness to *disability* is the basic factor, and issues which give the jury a fair chance to settle that question are all that can be required without drawing the lines of the submission so fine as to be confusing to the average man. The petitioner's tendered issues met this test.

We accordingly consider also that petitioner's pleading of

"pre-existing tubercular disease" as the sole or "a contributing cause" of responednt's disability was adequate to raise the defense in question.

Was the defense raised also by evidence? There was, indeed, none which assigned any particular percentage less than 100 to tuberculosis as a real cause of the disability. On the other hand, we do have respondent's evidence of the co-existence of both illnesses at the time of disability, and petitioner's evidence attributing all disability to tuberculosis. In our opinion this was some evidence of probative force from which the jury could draw a reasonable inference that tuberculosis contributed in some degree to respondent's disability, and the jury should have been permitted to determine the percentage of the contribution.

The fact that the trial court actually treated findings Nos. 25 and 26 as requiring a 5 percent reduction under Sec. 22, when the true effect of such findings would be rather to increase recovery, does not, of course, render harmless the error of refusing petitioner's proper issues. These were designed to effect a reduction on a different theory and might well have produced one larger than 5 percent. Nor can we go along with the respondent's argument that the submission of Nos. 25 and 26, as a matter of logic, forecloses additional issues under Sec. 22. It is enough to say here that the erroneous submission of Nos. 25 and 26 does not deprive the petitioner of its rights to submission of its own proper issues.

The judgments below are reversed and the cause is remanded for a new trial.

Associate Justice Walker not sitting.

Opinion delivered November 10, 1954.

Rehearing overruled December 15, 1954.