**COLUMBIA CASUALTY COMPANY,**
Appellant,

v.

**Arlena GRIGSBY et vir, Appellees.**

No. 11136.

Court of Civil Appeals of Texas.

Austin.

Feb. 19, 1964.

Rehearing Denied March 11, 1964.

Ramey, Brelsford, Hull & Flock, Donald Carroll, Tyler, for appellant.

J. B. Sallas, Crockett, for appellees.

ARCHER, Chief Justice.

This is a Workmen's Compensation case, tried to a jury. After a jury verdict based upon special issue findings, both parties moved for judgment, and the plaintiff's motion for judgment on the verdict was granted, the judgment awarding appellees total and permanent Workmen's Compensation benefits. Appellant filed its motion for new trial and an amended motion; such motion was overruled and an appeal was duly prosecuted to this Court.

The appeal is predicated on 27 points assigned as error and are to the effect there is no evidence that the injury suffered by plaintiff was due to the nature of her employment or the evidence was insufficient and no evidence, or the evidence was insufficient to sustain a finding that the hazard of dermatitis actually existed in plaintiff's employment and no evidence or that the evidence was insufficient that the hazard of dermatitis is peculiar to the occupation or employment in which plaintiff was engaged; that the court erred in sustaining plaintiff's objection to the testimony of witness Darsey pertaining to whether or not the hazard of dermatitis is peculiar to the occupation in which plaintiff was engaged; that the court erred in failing to include defendant's requested issues Nos. 1 through 4 inquiring if a former injury in anywise contributed to the incapacity of plaintiff to work, and if any such injuries have contributed to the incapacity of plaintiff to work, if any, and if any ear trouble, eye or sinus trouble aggravated or in anywise contributed to the incapacity to work, if any, of plaintiff, and if so the percentage that such condition contributed to the incapacity to work, if any, of plaintiff; that the court erred in rendering judgment for total and permanent incapacity because the answers to issues Nos. 15, 16, 17 and 17a restricted recovery to 178 weeks; that the court erred in overruling defendant's objection to issue No. 2 because such issue is multifarious and does not confine the jury to a finding of dust or fumes within the scope of plaintiff's employment, and there is no evidence as to dust as a causative factor and there is no pleading to support the submission of the causative theory; that the court erred in overruling defendant's motion for judgment non obstante veredicto because admissions by plaintiff in the pleadings revealed that the dermatitis was caused by contact with nylon cloth, the same being a non-compensable condition, and there was no evidence or insufficient evidence to show that the dermatitis suffered by plaintiff was sustained by her in the course and scope of her employment, and there was no evidence, or the evidence was insufficient that the injury suffered by plaintiff was due to oil, dust, gases or vapors.

We believe that the evidence in the record that the injury suffered by plaintiff was due to the nature of her employment and that the hazard of dermatitis actually existed in plaintiff's employment, and the jury's finding is supported by the record.

There is evidence that the hazard of dermatitis is characteristic and peculiar to the occupation process or employment in which plaintiff was engaged at the time she contracted the condition of dermatitis.

We believe that the charge submitted by the court presented the issues correctly and the answers of the jury to such was supported by the evidence.

The issues submitted and the answers of the jury found the plaintiff suffered from dermatitis since October 24, 1958, and that such was caused by dust and fumes and caused by her contact with nylon material or the dyes therein and that the dermatitis suffered by plaintiff was a producing cause of any total incapacity to work, that such incapacity began on November 4, 1958, and was permanent and that the dermatitis was due to the nature of her employment and that the hazard of dermatitis actually existed in plaintiff's employment for Alexander Manufacturing Company and that such hazard is char-

acteristic and peculiar to the occupation, process or employment in which plaintiff was engaged.

The jury found that the dermatitis has existed in an acute stage after October 24, 1958, and that such commenced November 4, 1958, and that such will continue 178 weeks.

Based on the verdict the trial court entered judgment for plaintiff and against defendant in part as follows:

"It is accordingly ORDERED, ADJUDGED AND DECREED that Plaintiffs do recover of and from the Defendant 180 weeks of compensation accrued to this date in the sum of $4,341.60, together with interest thereon in the further sum of $260.50, all in the sum of $4,602.10 and that Plaintiffs further recover of and from Defendant the further sum of 221 weeks of compensation accruing in the future in the amount of $4,908.09, making the total amount of this judgment in favor of Plaintiffs against Defendant the sum of $9,510.19 for which said amount let execution issue. It is further ordered that all costs incurred herein be adjudged against the Defendant and that this judgment bear interest at the rate of four per cent per annum until paid."

The plaintiff testified in detail as to her duties and employment and that she did not experience any breaking out of a rash on her body during the time she handled nothing but cotton material. The witness then testified:

"Q Mrs. Grigsby, will you describe for us the conditions in the plant itself and particularly with reference to mist or dust, that you might have encountered during any and all of this period of employment with the Alexander Manufacturing Company?

"A When you would go into the building, this nylon material would give off fumes, it would burn your eyes, nose and throat, and after you were in there a while, you didn't seem to notice it so bad. It had been that way the whole period I worked. Before I broke out, seemed like it had got stronger, and for a week before I broke out on a Friday, it had become so strong, I had to get some gauze to tie over my nose to keep it from burning, so I could sew. My eyes would water and I felt just terrible.

"Q I'll ask you to tell us whether or not your employer furnished gauze for the employees to apply to their faces, to tie over their face and nose?

"A No, sir, he did not. I bought it on my own.

"Q Did your employer or some foreman working for your employer know of this condition?

"A Yes, sir.

* * * * * *

"Q Now, I believe you have just testified that you broke out?

"A Yes, sir.

"Q Tell the jury, in brief, if you will, when you first noticed this breaking out and describe it for us generally, please, what happened?

"A It was on, I believe around the 24th day of October, I started to stinging and itching, after I had that burning in my nose and my eyes were watering. I went and looked in the mirror and I was broke out all over my face and neck and after looking more closely, it was all over my whole body. That was on Friday and I didn't feel like returning to work on Monday. I went back on Tuesday and continued to work on the rest of that week. I started swelling, my lips, my eyes and the glands in my neck, and it was affecting my breathing. So, the following Monday I went back to

the factory and told them that I had to have something done, and I went to the doctor.

\* \* \* \* \* \*

"Q About a third of the time on nylons and two-thirds then on other materials. Did that continue on up until the time you left, that rough percentage.

"A For a week or two before I left, most of what I did all together was on those nylon petticoats.

"Q For about the last two weeks then before you left, you were working almost full time handling nylon material, is that right?

"A Yes."

Mr. Murdock Darsey, president of Alexander Manufacturing Company, in 1958, testified:

"Q Up until and before the time you came with Alexander in September until the time these dermatitis claims were reported, was there on your premises there, a certain amount of dust?

"A Yes, we have a dust factor.

"Q It is ordinary dust or what is it? Is it dust like we have got here on the floor of the court room?

"A We have that too, there is a certain amount of, in your cotton fabric particularly, there is a lint dust. There is, when you sew nylon in the finish, sometimes there is a flaking that causes dust.

"Q Did you complete your answer?

"A I said there is a flaking that causes a dust.

"Q If you were say, sewing red nylon, would there be red dust or blue nylon, a blue dust?

"A Yes, sir, there is.

"Q Now, up until the time—oh, another question, was there any mist running around, hanging around in your plant, on your premises there?

"A As a suspended vapor?

"Q That would be my definition of a mist.

"A No, sir.

"Q Was there, Mr. Darsey, a distinctive odor, say, about the premises where this cloth was stored?

"A Yes, sir, there is.

\* \* \* \* \* \*

"Q I'll ask you whether or not you do not carry your present policy with the Columbia Casualty Company, is that correct?

"A Yes, sir.

"Q The fact you no longer carry your workmen's compensation insurance with Columbia Casualty Company, does it have anything to do with the claim asserted by Mrs. Grigsby, or Mrs. Cheatham or this other lady?

"A I believe that Columbia Casualty Company, after the facts of these cases requested that, because it looked like the loss ratio was going to be high, that we get our workmen's compensation through the Texas Assigned Risk Pool. We made application under the Assigned Risk Pool."

There can be no question but that Alexander Manufacturing Company knew the hazard of dermatitis in its type of industry was present. Hock et al. v. Texas Employers' Ins. Ass'n, Tex.Civ.App., 80 S.W.2d 793 er. dism.

In Zurich General Accident and Liability Insurance Company v. Industrial Commission, 203 Wis. 135, 233 N.W. 772, the Court took judicial notice of dusty occupations as giving use to lung trouble.

Dr. Fred Felder qualified as an expert testified as follows:

"Q Doctor, in your professional opinion, I will ask you to state whether or not Mrs. Grigsby's condition is caused by the dust and/or the actual contact with the nylon material, such as that introduced in evidence here today?

"A Based on the results of the patch test, I am of the opinion that her difficulty was caused by these two materials.

"Q Doctor, I'll ask you to state whether or not in your opinion Mrs. Grigsby could ever again work around nylon material, without experiencing the same difficulty.

"A I think she would have the same type of reaction."

■ Defendant requested issues Nos. 1 to 4 which were refused by the court. These issues are directed to the provision of Sec. 22, Art. 8306 Vernon's Ann.Civ.St., concerning the aggravation of an occupational disease by any other non-compensable disease, and providing that the number of weeks of compensation shall be reduced to such proportion only of the total number of weeks of compensation.

This provision of the Act is construed in Texas Employers Insurance Association v. Etheredge, 154 Tex. 1, 272 S.W.2d 869. In that case there was no question but that tuberculosis as a non-compensable disease had been aggravated by silicosis, a compensable occupational disease.

■ The Court was justified in rendering judgment for total and permanent incapacity based on the jury's answers to Special Issues Nos. 3 and 5 that plaintiff is suffering a total incapacity to work.

The defendant takes the position, based on Section 27 of Art. 8306, V.A.C.S., that the dermatitis suffered by plaintiff could be arrested by a change in employment and that such dermatitis had existed in an acute stage for 178 weeks would limit the recovery to 178 weeks.

■ This section was held by the Court of Civil Appeals in Aetna Casualty & Surety Co. v. Bailes, 285 S.W.2d 886, er. ref., n. r. e., not to limit compensation to the original acute state. The statute provides that the compensation is to be limited only when there are no further objective symptoms of the occupational disease, and plaintiff testified that she had never been free of the objective symptoms since she first contracted dermatitis.

■ We believe that the evidence is sufficient to show that the dermatitis suffered by plaintiff has existed in an acute state.

Mrs. Grigsby testified in part as follows:

"Q What year was that now?

"A In 1958 and then I wasn't able to return to work on Monday and when I went back I showed all of them how I was still broke out and then I started swelling the latter part of the week and just continued to get worse. I went to the doctor the following week.

*   *   *   *   *   *

"Q Now, I believe you have also testified and the Doctor has testified that your nostrils became enlarged and swelled and your ears and throat and neck glands and other glands. Just explain to the jury what happened, Mrs. Grigsby.

"A After I broke out, I started swelling, my lips, face, eyes, ears, hands and glands and practically all over. It affected my breathing at times, it would swell so bad it was hard to breath freely.

"Q Do you or do you not still experience that same type of trouble?

"A Yes, sir.

*   *   *   *   *   *

**56**

"Q Now, Mrs. Grigsby, I'll ask you to tell us whether or not you have experienced a thickening of the skin, of your skin, the skin of your body or on your body, since you first became affected with this condition from which you now suffer?

"A Yes, sir.

"Q Describe to us, describe to the jury that sensation of how it feels?

"A It has a thick, rough, burning, stinging feeling all the time, itches.

"Q Does your skin itself actually appear to thicken?

"A To a certain extent. It just feels, I don't know, thick and rough, stings and itches.

"Q When did you first experience that sensation?

"A Well, ever since I broke out.

"Q On what date or about what date?

"A On the 24th of October in 1958.

"Q Has that condition or has it not remained substantially the same since your broke out in 1958?

"A Well, it's there all the time. At times it gets worse, but it never completely clears up."

Dr. Fred Felder, the doctor treating Mrs. Grigsby, substantiated her testimony as to her dermatitis condition.

■ The submission of Special Issue No. 2 was not error because of submitting two of the causative elements, that is, *dust and fumes.* The pleadings and the evidence support the issue by showing that nylon dust and chemical fumes were causes of the dermatitis suffered by plaintiff and it was proper to group the two causes in a single issue. Traders & General Insurance

Co. v. Turner, Tex.Civ.App., 149 S.W.2d 593, er. dism.

■ There can be no question but that the injury complained of was sustained in the course and employment of plaintiff and that the dermatitis was contracted during the scope and course of plaintiff's employment, according to the evidence, and it was not necessary to submit such an issue. Employers Casualty Company v. Winslow, Tex.Civ.App., 356 S.W.2d 160, er. ref., n. r. e.

The jury heard all of the testimony offered and saw the witness and resolved the fact issues as reflected by its answers and we believe that the evidence supports the jury's finding.

The judgment of the trial court is affirmed.

Affirmed.