**UNITED STATES FIDELITY & GUARANTY COMPANY, Appellant,**

v.

**Gilbert BEARDEN, Appellee.**

**No. 12-83-0162-CV.**

Court of Appeals of Texas, Tyler.

Oct. 17, 1985.

Supplemental Opinion Nov. 1, 1985.

Rex A. Nichols and Stephen Patterson, Nichols, Merriman, Patterson & Allison, Longview, for appellant.

William A. Badders, Badders & Badders, Nacogdoches, for appellee.

COLLEY, Justice.

In this worker's compensation case, Gilbert Bearden, plaintiff/appellee, recovered a judgment for compensation for total and permanent incapacity. The jury found the incapacity was produced by repetitious physical traumatic activities sustained by Bearden while in the course and scope of his employment with Valmac Industries (Valmac). The jury also found that the value of past nursing services provided Bearden by his wife was $90,000.

United States Fidelity & Guaranty Company, Valmac's insurer under the Worker's Compensation Act,[1] presents three points of error. They challenge the legal and factual sufficiency of the evidence to support the jury's finding of injury, and contend, as we construe the point, that the amount of the award for nursing services is excessive. We affirm the judgment, provided Bearden makes a remittitur in the amount of $35,425.20; otherwise, we reverse the judgment and remand the case for a new trial.

From our reading of United's first two points and its argument thereunder, we construe the points as challenging the legal and factual sufficiency of the evidence to support the jury's finding that Bearden sustained a compensable injury. The evidence is undisputed. Bearden was a truck driver for Valmac. His duties consisted of delivering chicken feed to Valmac's customers (poultry growers) and unloading the feed into the bins at each chicken house. Bearden testified that he would make four deliveries of feed each day, and that the unloading operation at the chicken houses required from ten to twenty minutes at

1. TEX.REV.CIV.STAT.ANN. art. 8306–8309f (Vernon 1967 and Vernon Supp.1985), hereinafter referred to as the Worker's Compensation Act, and all references to articles are to the Texas Worker's Compensation Act.

each stop. He testified that he had engaged in such occupation for some seven years before he became disabled in September 1981. Bearden testified that each time he unloaded the feed, he inhaled the dust from the feed, as well as the dust generated in the chicken house. Bearden produced the only medical witness at the trial, Dr. Gene Ray Lindley, an internist with a subspeciality in pulmonary diseases. Dr. Lindley testified that he first examined Bearden on December 9, 1981; that his examinations, tests and observation led him to make a diagnosis that Bearden was suffering from chronic obstructive pulmonary disease (emphysema), bronchial asthma, chronic lung infection (atypical mycobacterial infection), chronic asthmatic bronchitis and a chronic seizure disorder. Dr. Lindley stated without equivocation that Bearden suffered from a hereditary deficiency of an enzyme called Alpha-1 antitrypsin which causes the onset of pulmonary emphysema at a young age, and that Bearden was also afflicted with emphysema and bronchial. asthma, neither of which was caused by the inhalation of the chicken house and chicken feed dusts. Lindley stated with equal firmness that Bearden's repeated exposure to such dusts constituted repetitious injuries which were a producing cause of Bearden's incapacity, which in Dr. Lindley's opinion was total and permanent. Dr. Lindley also testified that the inhalation of these dusts aggravated the pre-existing conditions of Bearden's lungs, and brought about his incapacity much earlier than such incapacity would have occurred absent the repetitious injuries of the inhalation of occupational dusts. On cross-examination, Dr. Lindley admitted that Bearden's lung diseases resulting from the enzyme deficiency were irreversible and progressive, but he also stated: "Mr. Bearden's incapacity and disability would not have been precipitated when it was but for his occupation...."

United contends that such medical testimony shows that Bearden's incapacity was produced solely by his pre-existing lung diseases or the aggravation, acceleration or excitement thereof by his repeated inhalation of the dust. In essence, United contends that aggravation, acceleration, or excitement of such pre-existing conditions is not compensable, citing *Home Insurance Co. v. Davis*, 642 S.W.2d 268, 269 (Tex.App. —Texarkana 1982, no writ), and *Texas Employers Insurance Association v. Schaefer*, 598 S.W.2d 924, 928–929 (Tex.Civ.App. —Eastland 1980), *aff'd* 612 S.W.2d 199 (Tex.1980).

The Worker's Compensation Act was amended in 1947 [2] and sections 20 and 22 were added to art. 8306. Section 20 of such amendatory act provided that certain listed occupational diseases were compensable, subject to certain limitations not material to the disposition of this case. Section 22 of that act remains intact and reads as follows:

> Where an occupational disease is aggravated by any other non-compensable disease or infirmity, or where incapacity or death from any other non-compensable cause, is aggravated, prolonged, accelerated or in anywise contributed to by an occupational disease, the number of weeks of compensation payable by the Association shall be reduced and limited to such proportion only of the total number of weeks of compensation that would be payable if the occupational disease were the sole cause of the incapacity or death, as such occupational disease, as a causative factor, bears to all the causes of such incapacity or death, such reduction in compensation to be effected by reducing the number of weekly payments of compensation for which the Association is liable.

In 1971, Section 20 of art. 8306 was amended to read:

> Wherever the terms 'Injury' or 'Personal Injury' are used in the Workmen's Compensation Laws of this State, such terms shall be construed to mean damage or harm to the physical structure of the body and such diseases or infections as naturally result therefrom. The terms 'Injury' and 'Personal Injury' shall

---

**2.** Tex.Gen.Laws, ch. 113 §§ 2, 4, 1947 Tex.Gen. Laws 176, 177–178 (amended 1971).

also be construed to mean and include 'Occupational Diseases,' as hereinafter defined. Whenever the term 'Occupational Disease' is used in the Workmen's Compensation Laws of this State, such term shall be construed to mean any disease arising out of and in the course of employment which causes damage or harm to the physical structure of the body and such other diseases or infections as naturally result therefrom. An 'Occupational Disease' shall also include damage or harm to the physical structure of the body occurring as the result of repetitious physical traumatic activities extending over a period of time and arising in the course of employment; provided, that the date of the cumulative injury shall be the date disability was caused thereby. Ordinary diseases of life to which the general public is exposed outside of the employment shall not be compensable, except where such diseases follow as an incident to an 'Occupational Disease' or 'Injury' as defined in this section.

■■■ United's view of the record is erroneous as is clearly demonstrated by our summary of the medical testimony. As required under art. 8306, Sections 1 and 20, Bearden proved by his and Dr. Lindley's testimony that he suffered "damage or harm to the physical structure of [his] ... body occurring as a result of repetitious physical traumatic activities ... arising in the course of his employment," which were a producing cause of total and permanent incapacity. The evidence clearly shows that Bearden was also afflicted with the pre-existing lung diseases, and that the repeated daily inhalation of the dust encountered by him in the course of his employment aggravated such non-occupational and non-compensable diseases. However, the evidence does not justify a conclusion that the pre-existing non-occupational diseases were the sole producing cause of Bearden's disability. Doubtless, the record does suggest that the pre-existing diseases may have contributed to Bearden's disability, and perhaps, if United had pleaded such defense under Section 22 of art. 8306, the trial court might have been required to submit a special issue covering that defense. However, United failed to allege [3] a Section 22 defense to reduce the recovery of Bearden by the percentage of his disability produced by the pre-existing non-occupational diseases. United bore the burden of pleading, proving and securing a finding on such issue. Art. 8306, Section 22; *Texas Employers' Insurance Association v. Etheredge*, 154 Tex. 1, 272 S.W.2d 869, 875–877 (1959). Thus the defense under Section 22 was waived. Consequently, we need not decide the correctness of the dictum found in *Home Insurance v. Davis*, 642 S.W.2d at 629, and *Texas Employers' Insurance Association v. Schaefer*, 598 S.W.2d at 928–929, or whether it would apply to the facts of this case. Points 1 and 2 are overruled.

■■■ Under its 3rd point, United asserts that "[T]he trial court erred in overruling defendant's motion to disregard the jury's finding in response to Special Issue 9 for the reason that the evidence was factually insufficient (insufficient evidence) to support the jury's answer to Special Issue 9." In Special Issue 9, the jury found that the value of past nursing services provided Bearden by his wife was $90,000 for 623 days, that is, from the date of the disability until the date of trial. In its argument, United states that the evidence is sufficient to support a finding of $54,574.80 (minimum wage rate of $3.65 × 24 hours × 623 days), but is not sufficient to support the finding made by the jury of $90,000. Considering the point and argument together, we have concluded that United is complaining that the amount of the jury's award for nursing services for Bearden's wife is excessive. We agree. In our judgment an award of $54,574.80 is a fair and reasonable amount under the evidence for the

---

3. United alleged the defense of sole-producing cause, but did not request the issue to be submitted.

value of the nursing services furnished Bearden by his wife. There being no other error requiring reversal of this case, the judgment of the trial court is affirmed, with the condition that Bearden file a remittitur in the amount of $35,425.20 within fifteen (15) days of the date of this opinion; otherwise, the judgment of the trial court will be reversed and the cause remanded for a new trial. Tex.R.Civ.P. 440.

### SUPPLEMENTAL OPINION

On October 17, 1985, we delivered an opinion in this cause affirming the judgment below on the condition that appellee Gilbert Bearden file a remittitur in the amount of $35,425.20 within fifteen days of the date of such opinion. The appellee has timely filed such remittitur. The judgment below is reformed to provide that Gilbert Bearden recover over and against United States Fidelity & Guaranty Company the sum of $98,633.40, together with postjudgment interest thereon at the rate of 9% from July 9, 1983, until paid; and that out of such recovery Bearden's attorneys are to be paid by Bearden the sum of $24,658.35. As reformed, the judgment of the trial court is affirmed.