The **AETNA CASUALTY & SURETY COM-PANY, Appellant,**

v.

**Frank J. DEPOISTER, Appellee.**

**No. 90.**

Court of Civil Appeals of Texas.

Corpus Christi.

Aug. 26, 1965.

Adams, Graham, Lewis & Graham, John E. Lewis, Harlingen, for appellant.

William E. York, McAllen, Raymond L. McDermott, Mabel Grey Howell, Houston, for appellee.

GREEN, Chief Justice.

This is a workmen's conpensation case tried to a jury, resulting in a judgment for appellee, Frank J. Depoister, against appellant The Aetna Casualty & Surety Company, for total and permanent incapacity.

The parties stipulated below that appellee sustained accidental bodily injuries on or about August 5, 1961, while working in the course of his employment for T. E. Mercer Trucking Co., and that all jurisdictional prerequisites to the maintenance of this suit had been complied with. Appellee claimed total and permanent disability as a result of a back injury, and a left, direct, inguinal hernia. In answer to special issues, the jury found that the accidental injury was the producing cause of (1) total incapacity, (2) beginning August 5, 1961, which was (3) permanent; (4) no partial incapacity; (8) another employee of the same class worked at least 210 days of the year prior to August 5, 1961; (9) his average daily wage rate was $22.00; (10) $80.00 per week

is just and fair to the parties as an average weekly wage of Depoister.

The undisputed evidence showed that appellee had been subjected to two operations prior to the accident, as follows: a double hernia operation in 1955, and a cervical operation on his neck by reason of a neck injury occurring February 21, 1959, both being compensable. The jury found (12) that his incapacity was not solely caused by his previous injuries, but (13-14) that they had contributed 12% to his incapacity; that (15-16) the incapacity was not solely caused by nor contributed to by his ulcer condition.

Appellee's motion to disregard the answers to Issues 13 and 14, that the prior injuries had contributed 12% to his incapacity, was granted, and judgment was rendered for appellee in accordance with the remainder of the verdict, payable in a lump sum as stipulated.

■ In its First Point, appellant contends that the trial court erred in granting appellee's motion in limine, and instructing appellant's counsel that they would not be permitted to show the beneficial effects of surgery, in instructing the jury not to consider the beneficial effects of surgery, and precluding counsel for appellant to argue such effects before the jury.

In this connection, it is the position of appellant that it admitted liability for appellee's claim of injury before the Industrial Accident Board and tendered an operation to appellee, in compliance with the requirements as stated by the Supreme Court in Texas Employers Insurance Association v. Shelton, 161 Tex. 259, 339 S.W.2d 519, and Truck Insurance Exchange v. Seelbach, 161 Tex. 250, 339 S.W.2d 521, and that although the Board failed to order either a medical examination or an operation, evidence of the beneficial effects of surgery on appellee was admissible. Appellee contends (1) that appellant did not make either an unequivocal admission of liability or an unequivocal tender of operation for either of the alleged injuries while the matter was before the Board; (2) that no such offer was timely made in accordance with Board's rules; and (3) that appellant, while the matter was before the Board, expressly refused to provide an operation for the inguinal hernia, and (4) that appellee was not put to a choice of having or refusing an operation, since the Board refused to order one.

Appellee's claim before the Industrial Accident Board was set for hearing on November 14, 1961. On November 6, 1961, counsel for appellee made written demand to the Board for surgical operation on appellee for hernia, accompanying same with written report of Dr. James Albert Brown recommending such operation. Thereafter, on November 14, 1961, the date of the hearing, appellant delivered to the Board its letter, listing the style and number of appellee's claim there, and reading in part as follows:

"STATUS OF CASE: Compensation has been paid in the amount of $350.00 covering period from 8-6-61 to 10-15-61 comprising 10 weeks. NATURE AND EXTENT OF DISABILITY is one of the issues involved in this claim.

"EVIDENCE: Kindly allow us to submit the following to the Honorable Board:

"1. Your carrier herein admits liability.

"2. In line with Article 8306 Section E and the Shelton and Seelbach cases, carrier herewith tenders any and every surgical procedure which is calculated or could be calculated to effect a cure for any and all conditions which claimant might or could have which surgery will aid or cure.

"3. Your carrier further demands any and all indicated surgical procedures be performed on claimant herein which are calculated to aid, be beneficial and/or effect a cure.

"4. Your carrier herein further requests the Board to have claimant examined by Dr. of their choice to determine what surgery is indicated and required and make all orders and findings necessary as per the statute and the law to necessarily complete this transaction and record."

Attached was a medical report of Dr. William H. Hagan, applicable only to appellee's claimed back injury, and being entirely negative as to any operation.

Appellee's attorney, Mr. McDermott, testified that while the matter was pending before the Board, he requested of appellant's duly authorized agent an operation to remedy appellee's hernia, and that such operation was refused by appellant, and that thereafter appellant continued in its refusal. This testimony was not controverted.

On November 27, 1961, the Board entered its award, which included the provision "that demand for surgery is denied."

Appellee's motion in limine was to preclude any reference to benefits appellee might obtain from surgery upon appellee for a ruptured disc, and also for the hernia condition. The motion was sustained, and appellant's offered evidence thereon was excluded by the trial court. The bill of exceptions taken out of the presence of the jury discloses that appellee's doctor, Brown, if permitted would have testified that in his opinion appellee would have been benefited by surgery.

The offer or demand of appellant for an operation was not timely made. Rule 5.20 of the Industrial Accident Board, and before us in connection with appellee's written demand for an operation for hernia, provides that written demand for surgical operation must be filed with the Board at least seven calendar days immediately prior to the hearing. Appellant's letter was received by the Board on the day of the hearing.

In Texas Employers' Insurance Association v. Curry, Tex.Civ.App., 347 S.W.2d 334, writ ref., the letter from insurer demanding an operation was received by the Board on the date set for the hearing. The Court held Rule 5.20 to be reasonable and valid, and said:

"We therefore hold that since appellant's written demand for surgery was *not timely filed* with the Industrial Accident Board under its Rule 5.20, the Board had ample authority to refuse appellant's demand for surgical operation upon appellee. * * *

"Under the record in this cause medical testimony asserting the curative effects of surgery upon a herniated disc was not admissible in evidence in this cause over the objections made by appellee."

See, also, Standard Insurance Company v. Biggers, Tex.Civ.App., 352 S.W.2d 290.

Although appellant's letter to the Board contained the statement that it admits liability, there was nothing to show what it admitted liability for. At the time of the letter, it was evidently denying liability to appellee for his right to compensation, for it had quit paying him compensation three weeks earlier, and the letter so shows. The opinion of appellant's doctor, as contained in a report accompanying the letter set out above was that appellee's claim of back injury was entirely subjective, that there is no organic basis for his back trouble, that a myelogram showed no cause for the continued back trouble, and that there was no evidence of any permanent disability. Appellant refused appellee's request for a hernia operation, made direct to appellant by appellee while the matter was before the Board. Appellant's letter to the Board nowhere assumed unequivocally liability for the costs of an operation, including doctors', hospital, medical and convalescent care, as prescribed by the statute, and liability for the consequences of the operation. No copy of the letter was sent appellee or his lawyer, and no tender of an expense free operation was made by appellant to appellee while the matter was pending before the Board, or at any other time.

Our State Supreme Court, in Hardware Mutual Casualty Co. v. Courtney, 363 S.W. 2d 427, in affirming the trial court and the Court of Civil Appeals, and in holding that under the facts presented evidence of the beneficial effects of surgery offered by appellant insurance carrier in a workmen's compensation case was not admissible, discussed the holdings theretofore made in Truck Insurance Exchange v. Seelbach, 161 Tex. 250, 339 S.W.2d 521; Texas Employers' Insurance Association v. Shelton, 161 Tex. 259, 339 S.W.2d 519; and Cook v. City of Austin, 161 Tex. 294, 340 S.W.2d 482. We quote from the opinion in Courtney as follows:

"These cases then point out that the first thing the insurer must do to make the proffered testimony admissible is to admit liability. The cases have not said what liability must be admitted. * * *

"While we would not attempt to prescribe the form for such admission, to remove the question of liability, the insurer would have to admit unequivocally the substance of the following: a compensable injury to the employee in the scope of employment; liability for the injury for which a surgical operation would or should prove beneficial to the employee; liability for the cost of the operation, including doctors, hospital, medical, and convalescent care as prescribed by the statute and the Board; and liability for the consequences of the operation, within the provisions of the workmen's compensation act. Compare Texas Employers Ins. Ass'n v. Musick (Tex.Civ.App. 1961, no writ), 349 S.W.2d 619.

"The carrier here fell short of these requirements. First and last, its position was that the claimant had been overpaid and that claimant had no residual disability. In between, it did not unequivocally offer surgery and full responsibility therefor. Neither the insurer nor its doctors recommended surgery while her case was before the Board. It made an offer to pay compensation during the period beginning when she appeared for her myelogram and continuing until she was released by the doctor. There was nothing said about liability thereafter.

"The insurer in its briefs say that this, or at least some of this, is implied in its letters, and that, if not, it would be estopped to deny liability. It is our holding that the tender and admission of liability must not be left to implication and estoppel."

In the present case, the Board refused to order an operation. Thus, appellee was not put to an election to have surgery or refuse such. He was never called upon by the Board either to accept or to reject an operation under any of the provisions of Art. 8306, Vernon's Ann.Tex.Civ.St., and consequently never refused an operation. There was no evidence before the Board that an operation would effect a cure, or materially and beneficially improve appellee's condition. In fact the only evidence before the Board, the doctor's report attached to appellant's letter, was to the contrary.

For the reasons stated, the evidence offered by appellant as to beneficial effects of an operation was inadmissible. Consolidated Underwriters v. Foster, Tex.Civ. App., 383 S.W.2d 829, writ ref., n. r. e.

Appellant's First Point is overruled.

■ Appellant's Second and Third points allege error in the trial court's definition in the charge to the jury of the terms "total incapacity" and "partial incapacity."

The definitions given were as follows:

"By the term 'Total incapacity,' as used in this charge, does not imply an absolute incapacity to perform any kind of labor, but a person disqualified from performing the usual tasks of a workman in such a way as to enable him to both obtain and retain employ-

ment *doing the usual tasks of a workman* is regarded as being totally incapacited."

The italics are ours, to indicate the portion of the definition objectionable to appellant.

"By the term 'Partial incapacity' as used in this charge, is meant any incapacity less than 'total incapacity' as defined herein."

Appellee argues that the appellant failed to preserve any error to the complaint alleged in these two points because the assignments in the motion for new trial were too general to apprise the trial court of the alleged error attempted to be raised. The assignments in the motion for new trial on which the points are based read as follows:

"II.

"The error of the court in overruling Defendants' objections to the Court's charge which objections are hereby incorporated herein by reference and adopted as though the same were set forth herein verbatim.

\* \* \* \* \* \*

"X.

"The Court errored in submitting its definition of 'total disability' for the reason that when same is taken in connection with the definition erroneously given by the Court of partial disability same does not correctly encompass the elements that can be considered and should be considered by a jury in determining partial incapacity and by the definition thus given in the Court's comments upon the weight of the evidence and amounts to an instruction by the Court to the effect that one who is able to perform labor of a less remunerative class which would result in a depreciation or reduction of his earning capacity, would not be partially incapacitated when the true definition of partial incapacity is in substance that one who can perform labor of a less remunerative class which would result in a deduction or depreciation in his earning capacity is only partially incapacitated and thus the Defendant was prejudiced by the Court's comment and was deprived of an opportunity to have the issue of partial incapacity truly determined by the jury."

We have copied the above Paragraph X of appellant's motion for a new trial in order to show that nowhere therein was the trial court advised that appellant contended he erred in including in the definition of total disability, otherwise standard [1] and unobjectionable, as agreed by appellant, the repetition of the phrase "doing the usual tasks of a workman", as heretofore stated. We have read all of the objections made by appellant to these definitions, and nowhere in such objections does appellant state to the trial court that it was the repetition of this phrase that was objectionable to him in the definition of total incapacity. As stated in McDonald v. New York Central Mutual Fire Insurance Co., Tex.Sup.Ct., 380 S.W. 2d 545, "[i]t (the objection to the court's charge) certainly does not as clearly state the nature of the error as the insurer does in its brief filed here \* \* \*."

There was no separate assignment that the court erred in its definition of partial incapacity.

In Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887, in discussing Rules 320, 321, 322 and 374, Texas Rules of Civil Procedure, governing the forms of assignments of error in motions for new trial which become the basis of points of error on appeal, the Court, in a per curiam opinion, said:

"While Rule 1 states that the rules are to be given a liberal construction to the end that a just, fair, equitable and impartial adjudication of the rights

---

**1.** T.E.I.A. v. Mallard, 143 Tex. 77, 182 S.W.2d 1000; T.E.I.A. v. Brock, Tex.Com.App., 36 S.W.2d 704.

of litigants under established principles of substantive law may be obtained with expedition and dispatch and without unnecessary expense, Rules 320, 321, 322 and 374 were deliberately adopted to serve a useful purpose. There must be a substantial compliance with the provisions of those rules if a litigant is to have his points of error based thereon considered by an appellate court. * * *

"An assignment of error in a motion for new trial which merely directs the trial judge to scan all of a party's objections to the charge of the court is legally insufficient to require or to justify consideration of a point of error based thereon. * * *

"Assignments of error in a motion for new trial which do no more than adopt from or refer in general terms to other motions, etc. do not 'specify', or 'distinctly set forth', or 'clearly identify' a ground of error."

Clearly, under the authority of Wagner v. Foster, supra, appellant's assignment II contained in his motion is insufficient. Assignment X appears to be a complaint concerning the definition of "total incapacity" (the motion states disability) as a comment on the weight of the evidence, and amounts to an instruction concerning what is partial incapacity. The assignment does not set forth, as ground for new trial, that the trial court erred in its definition of partial incapacity.

It is our opinion that appellant's motion for new trial did not present allegations of error in the definition of total incapacity, or of partial incapacity, in such a manner that the same might be clearly identified and understood by the trial court as required by Rules 320, 321 and 322, T.R.C.P., and for such reason appellant is not entitled to present the question as raised by its Second and Third Points. Meyer v. Great American Indemnity Company, 154 Tex. 408, 279 S.W.2d 575; Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887, supra; Col-

lins v. Smith, 142 Tex. 36, 175 S.W.2d 407; Tindall v. Tacconelly, Tex.Civ.App., 328 S.W.2d 909, writ ref., n. r. e.

■ Appellant in his Fourth Point contends that the trial court deprived it of an offset by committing error in setting aside the jury's answers to Special Issues Nos. 13 and 14, appellant stating that such findings were supported by the evidence.

The jury found, in answer to these issues, that plaintiff's prior injuries of February 21, 1959, and of 1955 (13) contributed to incapacity to plaintiff (14) to the extent of 12%. The jury also found in answer to Issue 12 that appellee's incapacity was not caused solely by his previous injuries. As stated above, the court sustained appellee's motion to disregard findings No. 13 and 14 and rendered judgment in accordance with the remainder of the verdict.

We feel that the court erred in sustaining appellee's motion to disregard such answers to Issues 13 and 14. A careful study of the statement of facts shows sufficient evidence to support such findings. However, we find that such error did not lead to the entry of an improper judgment, and becomes immaterial in view of the other answers of the jury. Rule 434, T.R.C.P.

The evidence is uncontradicted that appellee did not work 210 days in the same or similar employment during the year preceding August 5, 1961. The jury found in answer to Special Issue No. 8 that another employee of the same class of appellee had worked at least 210 days of such period in the same or similar employment in the same or in a neighboring place; in answer to No. 9, it found that the average daily wage of such employee was $22.00 per day. According to the formula as established in Associated Indemnity Corporation v. McGrew, Tex.Com.App., 138 Tex. 583, 160 S.W.2d 912, this results in an average weekly wage rate of $126.92.

■ The jury further found that a just and fair average weekly wage rate for both

parties was $80.00. However, an employee is not entitled to judgment under the "just and fair" rate, being subdivision 3 of Sec. 1 of Art. 8309, until he has shown that subdivisions 1 and 2 of said Article have no application. Griffin v. Superior Ins. Co., Tex.Sup.Ct., 338 S.W.2d 415. Nevertheless, the same ultimate result is reached whether we use, as a basis of judgment, an average weekly wage of $80.00 per week, or $126.92.

$$100\% \quad \text{less } 12\% \quad = \quad 88\%$$
$$88\% \quad \text{of } \$80.00 = \$70.40$$
$$60\% \quad \text{of } \$70.40 = \$42.24$$

$42.24 being in excess of $35.00 compensation rate, the judgment was properly calculated at $35.00 per week for 401 weeks.

This formula is based on the provisions of Article 8306, Sec. 10, V.A.T.S., as amended in 1957, which reads as follows:

"While the incapacity for work resulting from the injury is total, the association shall pay the injured employee a weekly compensation equal to sixty per cent (60%) of his average weekly wages, but not more than Thirty-five Dollars ($35) nor less than Nine Dollars ($9) and in no case shall the period covered by such compensation be greater than four hundred and one (401) weeks from the date of the injury."

■ Appellant contends that by virtue of the jury's answers to Issues 13 and 14, its liability to appellee was reduced by 12% under Article 8306, Sec. 12c, which 12% should be deducted from the maximum recovery of $35.00 per week. We have found no authority supporting this latter contention.

We feel that our conclusion that the 12% contribution to the present incapacity of appellee by the prior injuries should be deducted from the average weekly wages before computing the compensation rate is supported by the following authorities: Associated Indemnity Corp. v. McGrew, Tex.Com.App., 138 Tex. 583, 160 S.W.2d 912; Texas Employers Insurance Ass'n v. Upshaw, Tex.Civ.App., 329 S.W.2d 144, writ ref., n. r. e.; Traders & General Insurance Co., v. Robinson, Tex.Civ.App., 222 S.W.2d 266, writ ref.

Appellant's Fourth Point, in so far as it claims to present reversible error, is overruled.

■ Appellant's Fifth Point was not briefed, and we consider same as having been waived. Weatherred v. Kiker, Tex. Civ.App., 357 S.W.2d 182, writ ref., n. r. e.

■ His Sixth Point alleges that the jury's answers to Special Issues 1, 2 and 3, finding total and permanent incapacity, beginning from the date of the accident, are so against the greater weight and preponderance of the credible evidence as to be manifestly wrong and unjust. Here again we have a similar problem as existed as to Points 2 and 3, concerning insufficiency of the assignment in the motion for new trial to preserve this point. The only assignment to which this point can be referrable reads:

"The answers of the jury to Special Issues Nos. 1, 2, 3, 4, 8, 9, 10, 11, 12, 15, 16 and 17, and each of them, is without support in the evidence; or alternatively, such answers of such jury and each of them is not supported by a preponderance of the evidence, or alternatively, such answers and each of them are so against the greater weight and degree of the credible evidence as to be manifestly unjust and wrong."

This is a general assignment, and this Court would be "in error in reversing and remanding this case for another trial only on a general assignment of error." Texas Employers Ins. Ass'n v. Hawkins, Tex.Sup. Ct., 369 S.W.2d 305. See, also, Biggers v. Continental Bus System, 157 Tex. 351, 303 S.W.2d 359, 368; Wagner v. Foster, 161 Tex. 333, 341 S.W.2d 887.

However, we have thoroughly read and studied the 765 page statement of facts, and find that there was evidence and sufficient evidence to sustain the answer of the jury to Issues 1, 2 and 3, and that such answers were not against the great weight and preponderance of the evidence.

Appellee, a truck driver, was injured August 5, 1961, while unloading pipe weighing 210 pounds per joint from his truck onto a pipe rack. He slipped and fell about 3½ to 4 feet as the pipe started rolling toward him on the catwalk of a drilling rig, falling spread out, hitting·flat on his back, hip and left leg. He was then taken first to a hospital in Falfurrias, and thereafter to a hospital in Houston. He has since been treated by a number of doctors, some furnished by the company, and some employed by appellee. The medical testimony differs radically as to the diagnosis and prognosis concerning appellee's physical condition. Suffice it to say that there was medical evidence that appellee, due to the accident of August 5, 1961, was suffering from a ruptured disc at L4 and a left unguinal hernia, both of which were disabling and permanent and which would disqualify appellee from the performance of regular, sustained manual labor.

Appellant's argument in its brief is based largely on appellee's work record since the accident, contending that appellee could not be totally and permanently injured under the evidence, since he had been employed doing hard physical labor during most of the 27 months before the accident and the trial. Testimony from appellee in explanation was that he was compelled to work due to economic necessity of supporting himself and his family, and the work he was doing was lighter than he was accustomed to.

■ As stated in Texas State Highway Dept. v. Kinsler, Tex.Civ.App., 230 S.W.2d 364, writ ref., quoted in Employers Mutual Liability Ins. Co. of Wis. v. Gallardo, Tex. Civ.App., 359 S.W.2d 933, 935, writ ref., n. r. e.:

"We think it too well settled to require discussion that the fact that an injured employee continued to work and make money after his injury is not a bar to recovery for total and permanent disability if the evidence supports a finding of a court or jury that he is in fact so disabled."

See, also, Muro v. Houston First & Casualty Ins. Co., Tex.Civ.App., 329 S.W.2d 326, writ ref., n. r. e.; Trinity Universal Insurance Co. v. Scott, Tex.Civ.App., 342 S.W.2d 348, writ ref., n. r. e.; Zurich Insurance Company v. Graham, Tex.Civ. App., 335 S.W.2d 673, writ ref., n. r. e.

Appellant's Sixth Point is overruled.

■ In answer to Special Issues 15, 16 17, the jury found that appellee's incapacity was not solely caused by his ulcer illness and subsequent operation, that such ulcer illness and operation did not contribute to his incapacity, and that the percentage of contribution was none. By its Seventh, Eight and Ninth Points, appellant alleges error in that such answers were not supported by the evidence, and were against the great weight and preponderance of the evidence.

The facts show that in the spring of 1963, appellee became bothered with ulcers, that he was hospitalized for about two months and was operated on in October, 1963. Dr. Brown testified there was no relation between the ulcer condition and the compensable injuries suffered by appellee to his back and hernia in the accident of August 5, 1961.

The ulcer condition was a non-compensable illness, and not one to which Art. 8306, Sec. 12c, supra, applies. St. Paul Fire & Marine Insurance Co. v. Murphree, 163 Tex. 534, 357 S.W.2d 744.

The jury's answers were supported by ample evidence, and were not against the

great weight and preponderance of the evidence, and these points are overruled.

 Appellant's Tenth Point is that the trial court erred in preventing the defendant from producing evidence and from cross-examining plaintiff in connection with prior claims of total and permanent disability after defendant had requested permission to do so for purposes of impeachment.

Appellant was not denied the right to cross-examine appellee or the doctors concerning the extent of his prior injuries of 1955 and 1959. In fact, both parties examined and cross-examined appellee and the doctors extensively on such claimed injuries.

Appellant in its statement in its brief says that it desired to offer plaintiff's petition in a prior damage suit involving the accident heretofore mentioned which occurred in 1959 to show that appellee was there claiming he was totally and permanently injured. The mere fact that appellee filed the suit, the amount of money sued for, the claim in the petition of total and permanent injury, (which the Supreme Court holds is a prediction, not a statement of facts), settlement and the amount thereof, were not admissible for impeachment, and were irrelevant as to any other issue in this trial. Hartford Accident & Indemnity Co. v. McCardell, Tex.Sup.Ct., 369 S. W.2d 331, 338. Appellee did not in his testimony deny the facts of such prior injuries, or the operation on his neck, or any other of the facts alleged as to his injuries. Appellant points out no statements of fact either in the pleadings offered or in its bill of exceptions inconsistent with any testimony given by appellee, and we have failed to find any. We recognize the rule that pleadings in other actions which contained statements of facts *inconsistent with* the party's present position are receivable in evidence as admissions. St. Paul Fire & Marine Ins. Co. v. Murphree, 163 Tex. 534, 357 S.W.2d 744, 747. The trial court's error in excluding the prior pleadings where there was testimony inconsistent with allegations was held harm-

less in that cause, the jury having found that the prior injuries did contribute to the present incapacity of plaintiff. Even if we did find inconsistencies, the same situation would be present here.

We hold (1) that no error is shown to have been committed by the court in excluding from evidence the petition filed by appellee in the prior suit, and in excluding the evidence contained in appellant's bill taken in the absence of the jury, much of which evidence was not objected to by appellee, and (2) that no reversible error is shown in the rulings of the trial court on this matter.

 Appellant's Eleventh Point reads:

"The Court erred in permitting the witness, Dr. Oates, to testify concerning his findings and conclusions based upon readings and sounds emitted from an electromyography machine without having first required an introduction of such readings and sounds into evidence when same were available upon tape and thus depriving the Defendant, Appellant herein, of the opportunity to cross examine in connection therewith, said evidence being hearsay without the introduction of such sounds and readings which were available."

Dr. Oates, used by appellee as a medical witness, qualified as an expert in the diagnosing and treatment of cases involving ruptured discs. One of the machines used by him in his practice is the electromyograph, which is somewhat similar to and works on the principle of an electrocardiograph, or an electroencephalograph, and is called, for brevity, E.M.G. It is a means of picking up the messages sent by the brain to a muscle in the form of an electric current, and amplifying it so that it can be seen on an oscilloscope screen (similar to a TV screen), and the electric impulses can be heard on a loud speaker. If there be total damage to the nerve, the electric impulse is shown by the E.M.G. to be blocked, and if partial damage be present, it will

be distorted; and one who is expert in such matters can see the abnormalities on the screen, and hear the impulses on a loud speaker. The findings on appellee's examination were recorded on an electromagnetic tape, which could be heard and seen only when the tape is played back through the electromyograph machine.

While Dr. Oates was testifying concerning the manner of using the E.M.G. Machine in making tests on appellee, appellant objected to such evidence as follows:

"Mr. Graham: We will object to any testimony here concerning something done on or heard on something, some screen or something like that, which is not in evidence. We do not have an opportunity to review it or repute it or cross examine in connection with it."

The court overruled such objection. Thereafter, and before any evidence had been given by the witness concerning his use of E.M.G. on appellee, the following occurred:

"Q. What does it look like on the screen you have?

A. When the muscle is completely relaxed and not moving, we have simply a base line, a beam flashing back and forth * * *.

Mr. Graham: Your Honor, could we have a running objection to this, concerning something which the Doctor, saw, which is not in evidence?

The Court: I will give you your exception."

This was the only running bill of exception which appellant was given to any of the testimony of Dr. Oates, and is what appellant in his brief indicates is the subject matter of his point of error.

Thereafter, the witness proceeded to testify through 83 pages of the statement of facts, on direct and cross-examination, without further objection on this score concerning his examination and diagnosis of appellee, based in part on the EMG studies, and confirmed by his studies of the x-ray pictures and myelogram already in evidence, and of his physical examination of appellee.

█ Unlike x-ray pictures, which should be produced in court before testimony is admissible as to what they show (Drake v. Walls, Tex.Civ.App., 348 S.W.2d 62, writ ref., n. r. e.), the production of the tape recordings in court would have been meaningless unless the electromyograph machine was also present, for as stated above, the findings could only be heard and seen when the tape is played back through the machine. There was no showing made that this machine was available, and no request made by appellant that it be produced in court. Appellant's counsel cross-examined witness at great length concerning the testimony he had given on direct examination and there is no indication presented that he was in any way handicapped by the absence of the tapes.

It is clear from the record that Dr. Oates was competent to give his medical opinion, not only from the findings of the EMG performed on appellee, but he was competent to give his opinion based on the x-rays and myelogram studies which had theretofore been introduced into evidence, and on his physical examination of appellee. The sum and substance of his testimony is to the effect that the EMG study confirmed the clinical findings of a ruptured disc at the L-4 level, and of nerve root involvement which the witness found based on his physical examination of appellee, which findings were also confirmed by the myelographic studies theretofore introduced in evidence, and by the x-rays. Except for the EMG studies, similar testimony had been given by Dr. Brown and Dr. Tyner.

We believe that no error was committed by the trial court in permitting the testimony concerning the EMG tests to be introduced over the objections as made. Lantex Construction Company v. Lejsal, Tex.Civ.App., 315 S.W.2d 177, writ ref., n. r. e. We are

convinced that since the testimony was merely cumulative of other evidence given by the same witness and by other qualified medical experts, there is no showing of any harm to appellant probably causing the entry of an improper judgment, and that no reversible error is presented by appellant's Point No. Eleven. Rule 434, T.R.C.P.; Drake v. Walls, supra; Hess, Inc. v. Garcia, Tex.Civ.App., 358 S.W.2d 391; 4 Tex. Jur.2d, Appeal and Error, Civil, Sec. 941, pp. 566, et seq.

Appellant's Eleventh Point is overruled.

Judgment affirmed.