**ROYAL GLOBE INSURANCE COMPANY, Appellant,**

v.

**James SUSON, Appellee.**

**No. 18584.**

Court of Appeals of Texas, Fort Worth.

Dec. 16, 1981.

Rehearing Denied Jan. 13, 1982.

Simon, Peebles, Haskell, Gardner & Betty and Anne Gardner, Fort Worth, for appellant.

Herrick, Purcell & Felber and Kirk Purcell, Michael F. Felber, Fort Worth, for appellee.

Before HUGHES, JORDAN and RICHARD L. BROWN, JJ.

## OPINION

JORDAN, Justice.

Royal Globe Insurance Company appeals from a judgment against it in the amount of $36,317.75 in favor of appellee on a jury verdict of total and permanent incapacity in a Worker's Compensation Case. The appeal is based upon four points of error.

We affirm the judgment.

This 47 year old appellee worked at General Motors in Arlington, Texas most of the time from 1957 until he was injured on the job on January 4, 1980. He held different jobs there over the years but for most of this time, 1965 until December 14, 1979, he worked as a stockman, driving a forklift. This job did not entail any bending or lifting. During the years he was employed as a forklift driver, appellee suffered two on the job injuries, one in February of 1973 when he fell on the concrete floor, and one on April 14, 1976 when he fell from the top of a box car to the floor. He suffered back injuries on both of these occasions, missing about three months of work in 1973 and approximately seven months in 1976. On both occasions, however, he was returned to full duty as a forklift operator. Following the 1976 back injury, he returned to work in December of 1976, and although he did have some severe back and leg pain thereafter, and some problems with his back, he testified that he was fully able to perform his duties as a forklift operator from December, 1976, until December 14, 1979.

On December 14, 1979 there was a reduction in force at the General Motors plant, as a result of which appellee, because of his seniority, was moved to the job of assembler, starting on January 2, 1979. As an assembler he put trunk lids on the cars as they moved down the assembly line. He was required to pick up the trunk lid, carry it over to the assembly line, and to then, with the help of an assembler on the other side of the line, put the trunk lid on the car. While picking up a trunk lid on January 4, 1980, he was turning with it to carry it to the line when he "felt something pop in his back."

His condition was diagnosed as a ruptured disc, and on April 10, 1980 a laminectomy and fusion between the fourth lumbar vertebra and the sacrum was performed. In answer to special issues submitted to it, the jury found that appellee received an injury in the course of his employment on January 4, 1980 which was a producing cause of total incapacity which began on

January 4, 1980, the duration of which was permanent.

■ Appellant's first two points of error assert that the jury findings that the January 4, 1980 injury was the producing cause of total incapacity and that such incapacity was permanent are so against the overwhelming weight and preponderance of the evidence as to be manifestly wrong. In evaluating these points we are required to examine all of the evidence to determine if it supports the jury's findings.

■ Viewed simply, appellant Insurance Company's theory is that appellee, having had two bad falls and two resulting back injuries prior to his January 4, 1980 injury, had a bad back and could not perform labor requiring bending, stooping, or lifting before January 4, 1980. Appellant contends that if he was totally and permanently incapacitated after January 4, 1980, it was not from the January 4th incident but from the previous injuries, and that he was in no worse condition after that time than he was before. Appellant further argues that the evidence is simply insufficient to show that the injury of January 4, 1980 was the producing cause of any total incapacity which was permanent.

It is necessary to briefly summarize the evidence to answer appellant's contentions. Mr. Suson, appellee, testified that though he had had a back injury in 1976, causing him to lose several months from work, he returned to work at General Motors in December of 1976, and worked as a forklift operator thereafter until December, 1979, that he had no further injuries or serious problems with his back between December, 1976 and December 14, 1979 when he was temporarily laid off because of a reduction in force.

Suson also testified that after his injury on January 4, 1980, he went to his family physician the following Monday, and that that doctor put him in the hospital in traction for one week. He said that since he was still suffering from his back he went to see a neurosurgeon in early February. In April of 1980 the neurosurgeon and an or-

thopedic surgeon performed a laminectomy and a fusion between L4 and the sacrum. Following the surgery he saw his orthopedic surgeon once a month and though he improved he could not and did not return to work at all prior to the trial of this case in January, 1981. He testified that in his opinion he could not perform any labor that required prolonged bending, stooping or lifting, and specifically that he could not work as a farmer, spot welder, material handler, or on the assembly line at General Motors.

Appellant strongly argues that there was no testimony from Dr. West, the orthopedic surgeon who operated on appellee, or from anybody else that the January 4, 1980 injury was the producing cause of total permanent incapacity. However, Dr. West testified that Suson did suffer an injury on the job on January 4, 1980 and that he could not, at time of trial, pass a pre-employment physical exam. He further testified that Suson could not perform the usual tasks of a workman such as bending, lifting or stooping and that he was totally incapacitated under the legal definition of total disability, which incapacity was permanent. Dr. West did testify that Suson could eventually return to light work that did not require repeated bending, lifting or stooping. He also testified that Suson's pre-existing back problems were probably a contributing factor to the problems for which he, Dr. West, treated him. He also testified that "[p]erhaps the January 4th injury was an aggravation of preexisting problems."

■ It is quite true that Dr. West at no time specifically stated that the January 4th injury was the producing cause of appellee's incapacity. However, we do not think that that is fatal to appellee's cause. Expert testimony as to producing cause is not necessary where there is testimony, either direct or circumstantial, that an incident or injury was the producing cause of incapacity. See *Insurance Company of North America v. Kneten*, 440 S.W.2d 52 (Tex.1969), a heart attack case, where it was said:

"Since the question is what precipitated *this attack at this time*, it requires no expert to decide the probabilities when the trier of fact is given evidence of prompt onset of the attack following an occurrence competent to affect adversely a defective heart. *As in all of those cases where a back injury promptly follows a lifting strain, or a ruptured blood vessel or heart attack promptly follows exertion, though there is not definite proof of the mechanical process by which the physical structure of the body is damaged, under the circumstances it is reasonable to believe that what the employee did on the job precipitated physical failure. The courts have often allowed this finding and permitted recovery under the Texas Workmen's Compensation Law.* (Citing cases.)" (Emphasis supplied.)

■ See also to same effect *Parker v. Employers Mutual Liability Ins. Co. of Wis.*, 440 S.W.2d 43 (Tex.1969); *Stodghill v. Texas Emp. Ins. Ass'n*, 582 S.W.2d 102 (Tex. 1979); *Transport Ins. Co. v. Campbell*, 582 S.W.2d 173 (Tex.Civ.App.—Houston [1st Dist.] 1979, writ ref'd n. r. e.). The medical expert need not use the exact magic words; the testimony is sufficient if the circumstances show that this is the *substance* of what the expert is saying. *Stodghill v. Texas Emp. Ins. Ass'n, supra.*

■ The evidence reviewed above, as well as other evidence in this record, also supports the jury's finding that the total incapacity of appellee was of a permanent nature. There was conflicting evidence on this point, but the weight of the evidence and the credibility of the witnesses was for the jury to decide. The findings of the jury that the January 4, 1980 injury was the producing cause of total incapacity which was permanent are not so against the overwhelming weight of the evidence as to be manifestly wrong and unjust. Appellant's first two points of error are overruled.

■ By its third and fourth points of error appellant says that the trial court erred in failing to properly apply Tex.Rev. Civ.Stat.Ann. art. 8306 sec. 12c (1967), to the findings of the jury to special issues five and six. By its answer to these special issues, the jury found that appellee's injury of April 14, 1976 at General Motors contributed to his incapacity to the extent of 35%. The contention is that by entering judgment for total and permanent incapacity in the amount of $36,137.75, the maximum amount of compensation benefits allowable, the trial court disregarded the findings of the jury that the April 14, 1976 injury contributed to his incapacity to the extent of 35% thereby failing to give effect to Tex. Rev.Civ.Stat.Ann. art. 8306 sec. 12c (1967).

Tex.Rev.Civ.Stat.Ann. art. 8306 sec. 12c (1967), reads, in pertinent part, as follows:

"If an employee who has suffered a previous injury shall suffer a subsequent injury which results in a condition of incapacity to which both injuries or their effects have contributed, the association (Texas Employers' Insurance Association) shall be liable because of such injury only for the compensation to which the subsequent injury would have entitled the injured employee had there been no previous injury; ..."

In computing the extent to which the appellee's compensation benefits would be reduced by virtue of the 35% contribution of his previous injury, the trial court followed the formula adopted in *Aetna Casualty & Surety Company v. Depoister*, 393 S.W.2d 822 (Tex.Civ.App.—Corpus Christi 1965, writ ref'd n. r. e.). In this case it was held that the percentage of contribution of an earlier injury is to be deducted from the average weekly wage of the claimant before computing the compensation rate. Accordingly, the claimant's weekly wage, even after deducting the contribution of the earlier injury, was higher than the then allowable statutory rate of compensation. The appellee in that case was therefore awarded the maximum amount of compensation allowable, which was $35.00 per week. The same situation occurred in this case. The trial court, following *Depoister*, applied the percentage of contribution of the April 14, 1976 injury to the appellee's stipulation weekly wage rate of $368.00. The maximum compensation rate under Tex.Rev.Civ.

Stat.Ann. art. 8306 secs. 10 and 29 (1980–1981), was, at the time of the 1980 injury, $119.00 per week, so that amount was multiplied by 401 weeks which, with the 4% discount allowed appellant by law and a credit of $6,426.00 for compensation previously paid, amounted to the total judgment of $36,137.35.

Appellant argues vigorously that the method of computation of the percentage of contribution of the earlier injury in this case frustrates and nullifies the intent and language of sec. 12c. It is contended that instead of the method used in this case and in *Depoister, supra*, that the only method of computation which will give effect to the statute in all cases is to deduct the percentage of contribution of the previous injury from the *compensation rate* after it has been determined by applying the provisions of Tex.Rev.Civ.Stat.Ann. art. 8306 sec. 10 (1967), in cases involving total incapacity. Appellant says that the method followed in *Depoister* will not accomplish the purpose of sec. 12c today since in the vast majority of cases, because of inflation, an employee's average weekly wage far exceeds the statutory maximum. Thus, it is urged the *Depoister* formula renders the statute meaningless in those cases.

Appellant's arguments have considerable logic and merit, and we would be inclined to follow them and reform the judgment in this case were it not for the holding of Courts of Civil Appeals in *Aetna Casualty & Surety Company, v. Depoister, supra*, and *Consolidated Casualty Insurance Co. v. Jackson*, 419 S.W.2d 232 (Tex.Civ.App. Houston [14th Dist.] 1967, writ ref'd n. r. e.). In the latter case it was also held that the percentage of the contribution to incapacity of a claimant of a prior injury should be deducted from the average weekly wages before computing the compensation rate. In *Jackson, supra*, the court said that the use of the formula suggested by the appellant there, which was the same as urged by appellant in this case, would be contrary to the rule that the Worker's Compensation Act should be construed liberally in favor of the injured worker.

Because of the well established precedent mentioned herein we reject appellant's contentions that the percentage of contribution of the prior injury should be applied, not to the wage rate, but to the compensation rate.

Appellant's third and fourth points of error are overruled.

In a cross-point appellee urges error in the trial court's submission of special issue nos. 5 and 6, on the question of the contribution to incapacity and the extent thereof the April 14, 1976 injury sustained by appellee on the ground that there was no evidence to support the submission of those issues. Part of the evidence in this record concerning that injury and the extent of its contribution to appellee's incapacity has been recited herein. There was certainly evidence to support the submission of special issues 5 and 6. The failure to submit them, under this evidence, would have been error.

In another cross-point appellee moves this court to assess an additional 10% damages against appellant for what appellee contends is a frivolous, for delay only appeal. This is asserted under Tex.R.Civ.P. 435 and 438. This is not a frivolous appeal, filed for delay purposes only. There were serious questions raised on appeal, as our discussion of appellant's third and fourth points of error, reveals. Appellant had the unquestioned right of appeal under our law and rules of procedure and this right should not be lightly regarded. This cross-point is overruled.

The judgment is affirmed.